J-A23010-18

2019 PA Super 93


BRIAN KOWALSKI : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
TOA PA V, L.P., AND TRADITIONS OF : No. 80 WDA 2018
AMERICA AT LIBERTY HILLS :
(BEAVER) CONDOMINIUM :
ASSOCIATION :

Appeal from the Judgment entered January 2, 2018
In the Court of Common Pleas of Beaver County Civil Division at No(s):
11131-2013

BRIAN KOWALSKI : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
TOA PA V, L.P.; TRADITIONS OF :
AMERICA AT LIBERTY HILLS :
(BEAVER) CONDOMINIUM : No. 125 WDA 2018
ASSOCIATION :
:
Appellants :

Appeal from the Judgment entered January 2, 2018
In the Court of Common Pleas of Beaver County Civil Division at No(s):
11131-2013


BEFORE:   BOWES, J., SHOGAN, J., and STABILE, J.

OPINION BY BOWES, J.:                    FILED MARCH 27, 2019

Brian Kowalski appeals, and Traditions of America at Liberty Hills

(Beaver) Condominium Association ("Condo Association") cross-appeals, from

the judgment entered on January 2, 2018.[1]  We affirm in part, reverse in part, and remand for further proceedings.

Mr. Kowalski owns property situated downhill from the property on which the Liberty Hills Condominiums were constructed.  The trial court set forth the relevant facts as follows:

> [Mr.] Kowalski acquired the property, that he claims is being flooded, when he purchased it at a Sheriff's sale on or about March 12, 2012.  The previous owner, David Hoffman, purchased the property, virtually undeveloped, in 1977.  At first, Mr. Hoffman lived in the dilapidated farmhouse, which he later remodeled. While he lived there, Mr. Hoffman installed a piping system to collect storm water through the valley on his property uphill to the Kenny Farm, which is the area where the Liberty Hills Condominiums are now located.  From 1982 to 1983, over the course of a year and a half, Mr. Hoffman buried a natural stream on the property, using 12-inch to 24-inch underground pipes. These pipes were used to carry water runoff from the uphill properties, in the area of Kenny Farm, across his property, to the Crow's Run Creek.  Mr. Hoffman started the drainage system up at the ravine with a 12-inch pipe, and as it progressed down through the valley, he increased to an 18-inch pipe and ended up with a 24-inch pipe down at Crow's Run Creek.  He installed catch basins along the way.  He also removed all of the trees, and then cleared the property to make a pond and build a new residence. Over the course of the next several years, he constructed the pond, gazebo and residence on the property, and he lived there until he started to experience financial difficulties around 2005 or 2006.  He vacated the property following a mortgage foreclosure action in 2009.
>
> In 2007, while Mr. Hoffman was still living there, New Sewickley Township and Economy Borough approved TOA's plan to develop the Liberty Hills Condominium site on the Kenny Farm located uphill from the Hoffman property.  As part of the

_____

[1] Additional defendant, TOA PA V, L.P.'s ("TOA"), did not file an appeal, but submitted briefs for our consideration.  When the arguments of TOA and the Condo Association coincide, we will refer to these parties as "the defendants."

development, TOA constructed a detention pond at the Liberty Hill Condominiums site to detain the water flow from Liberty Hills that drained onto the Hoffman property to Crow's Run Creek. Mr. Hoffman raised concerns about the development to both TOA and [New Sewickley] Township. The development is located partially in New Sewickley Township and partially in Economy Borough. Both municipalities approved the TOA storm water management plan prior to construction.

Since the Liberty Hills Condominiums were built, the parties have disagreed about the nature and extent of the water runoff from the development, and how, or whether it has adversely affected the Hoffman/Kowalski property. Prior to buying the property, Mr. Kowalski lived only a few miles away; he drove by it a couple of times per week, since 2006 or 2007. Mr. Kowalski was aware of flooding issues on the property before he purchased it. From 2009 to 2012, the property remained vacant. Mr. Kowalski bought the property at the Sheriff's sale in March 2012 and moved in shortly thereafter. Although the home needed some work because it sat vacant for a few years, the home was habitable.

Mr. Kowalski filed this lawsuit [against TOA and the Condo Association (collectively "the defendants")] in July 2013, claiming that water runoff from Liberty Hills Condominiums overwhelms the storm water pipe and causes flooding on his property. [He asserted claims sounding in breach of contract, negligence, trespass, nuisance, and a violation of the Storm Water Management Act. The Condo Association filed a cross-claim for indemnity against TOA.] TOA and the [Condo] Association claim that any flooding on the Kowalski property is caused by Mr. Hoffman's burying of the natural stream, using a pipe that was too small to handle the natural storm water runoff. They also allege that the remedy Mr. Kowalski seeks to fix the flooding on his property was necessary before any construction at Liberty Hills, and as such, he has suffered no harm caused by their actions.

[The parties filed cross-motions for summary judgment. The trial court granted partial summary judgment in favor of TOA and the Condo Association on the breach of contract and negligence claims, reasoning that those claims were barred by the relevant statute of limitations. The case proceeded on the

- 3 -

remaining claims for trespass, nuisance, and a violation of the Storm Water Management Act.]

At [a non-jury] trial, Mr. Kowalski offered testimony from a professional engineer, Scott Shoup, who has served as the engineer for several municipalities, including Economy Borough. As part of his duties as the Economy Borough engineer, Mr. Shoup approved the storm water plan for the Liberty Hills Condominium Development. He testified that, in his professional opinion, the water runoff after construction was greater than anticipated in the original plan submitted to [Economy] Borough. In his opinion, to remedy the excess water will require the installation of 36[-]inch and 42[-]inch pipes from the top of the hill, across the Kowalski property, to the Crow's Run Creek. He believed the storm water plan for the property should be designed to handle a 100-year storm, as recommended by the DEP. Significantly, on cross examination, Mr. Shoup acknowledged that the same remedy was needed to manage storm water runoff on the Kowalski property before any construction at Liberty Hills.

Mr. Kowalski [sought] damages in excess of $300,000, the cost to install the storm water management system recommended by Mr. Shoup. Following presentation of Mr. Kowalski's case in chief, both Defendants made oral motions for a non[]suit on Mr. Kowalski's claims for trespass, nuisance, and a violation of the Storm Water Management Act. The [trial c]ourt granted the motions. The [trial c]ourt entered a written order confirming the entry of a non[]suit on the docket, on November 16, 2017. . . .

. . . .

Mr. Kowalski filed [timely] post-trial motions and requested the [trial c]ourt to reverse its decision on summary judgment concerning the breach of contract and negligence claims. Mr. Kowalski also requested the [trial c]ourt to set aside the non[]suit on the nuisance, trespass, and Storm Water Management Act claims.

Trial Court Opinion, 12/12/11, at 2-5 (citations to record and footnotes omitted).

On December 12, 2017, the trial court entered an opinion and order granting in part and denying in part Mr. Kowalski's post-trial motions. The trial court affirmed (1) the entry of summary judgment on the breach of contract and negligence claims; and (2) the entry of nonsuit on the nuisance and Storm Water Management Act counts. However, it determined that the entry of nonsuit on the trespass claim was in error, reversed that ruling, and entered judgment in favor of Mr. Kowalski on his trespass claim against the Condo Association. The trial court awarded Mr. Kowalski nominal damages of only $1.00. He thereafter filed a timely notice of appeal, and the Condo Association filed a timely notice of cross-appeal.[2]

At appeal No. 80 WDA 2018, Mr. Kowalski raises the following issues for our review:

1. Whether [Mr. Kowalski's] negligence and breach of contract claims are barred by the statute of limitations.

2. Did the trial court err in failing to enter judgment in favor of [Mr. Kowalski] on the breach of contract claim[?]

3. Did the trial court err in granting a non[]suit to [TOA and the Condo Association] on [Mr. Kowalski's] trespass and nuisance claims[?]

4. Did the trial court err in finding that there was not a causal nexus between the trespass and the loss/damage to [Mr. Kowalski?]

_____

[2] This Court sua sponte consolidated the appeals.

5. Did the trial court err in entering judgment in favor of [Mr. Kowalski] and against . . . [the Condo Association] for only nominal damages[?]

Kowalski's brief at 6 (unnecessary capitalization omitted).[3]

At appeal No. 125 WDA 2018, the Condo Association raises the following issues for our review:

1. Did the trial court err as a matter of law in granting Mr. Kowalski's motion for post-trial relief with respect to his trespass claim against [the Condo Association] because it misapplied the law of Pennsylvania regarding discharge of water from an uphill landowner's property, because the evidence did not support a finding that the [Condo] Association was responsible for causing the complained of discharge of storm water from its property on to Mr. Kowalski's property, and because there was no evidence that the [Condo] Association owned the storm water management system at Liberty Hills[?]

2. Did the trial court err as a matter of law in granting Mr. Kowalski's motion for post-trial relief with respect to his

_____

[3] Initially, we note that, although Mr. Kowalski purports to raise five issues on appeal, the argument section of his brief is limited to two sections. See Pa.R.A.P. 2119(a) (providing that "the argument shall be divided into as many parts as there are questions to be argued"). Although we decline to find waiver on this basis, see id., Mr. Kowalski's failure to set forth a separate discussion for each of his issues hampers our ability to discern which arguments pertain to which issues.

Further, Mr. Kowalski's third issue purports to challenge the trial court's entry of nonsuit on his trespass and nuisance claim. However, Mr. Kowalski does not discuss the nuisance claim in his brief. Therefore, his challenge to the entry of nonsuit on the nuisance claim is waived. Additionally, upon post-trial motions, the trial court reversed the entry nonsuit on the trespass claim, rendering this aspect of his third issue confusing. Nevertheless, in his brief, Mr. Kowalski clarifies his position that the trial court correctly reversed the entry of nonsuit, but erred in imposing liability for trespass only upon the Condo Association and not upon TOA.

trespass claim against the [Condo] Association because [Mr.] Kowalski did not have standing to assert that claim?

3. Did the trial court err as a matter of law in granting Mr. Kowalski's motion for post-trial relief with respect to his trespass claim against the [Condo] Association because that claim was barred by the statute of limitations?

4. Did the trial court err as a matter of law in not conducting a trial on the [Condo] Association's cross-claim for indemnity against TOA . . . [where the] evidence showed that TOA designed and built the Liberty Hills storm water drainage system, and there was no evidence that discharge of water on to the [sic] Mr. Kowalski's property was caused by failure to maintain the drainage system[?]

Condo Association's brief at 3 (unnecessary capitalization omitted).

### Breach of Contract and Negligence

As Mr. Kowalski's first two claims concern the trial court's entry of summary judgment in favor of TOA and the Condo Association on the breach of contract and negligence claims, we will address them together. In reviewing the grant or denial of a motion for summary judgment,

[w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Abrams v. Pneumo Abex Corp., 981 A.2d 198, 203 (Pa. 2009).

Mr. Kowalski contends that the trial court erred in concluding that his breach of contract and negligence claims were barred by the statute of limitations. He asserts that the claims "would have originated when TOA improperly designed and constructed the Liberty Hills Development or when TOA and the [Condo] Associat[ion] failed to manage or rectify the excessive flow of water caused by the construction of Liberty Hills." Kowalski's brief at 27-28. According to Mr. Kowalski, he purchased the property on March 12, 2012, and filed suit sixteen months later on July 23, 2013. He claims that this sixteen-month period is within the two-year statute of limitations applicable to negligence actions, 42 Pa.C.S. § 5523, and within the four-year statute of limitations applicable to contract actions, 42 Pa.C.S. § 5525(a)(8).

Mr. Kowalski further argues that the breach of contract and negligence claims are continuing in nature because the damages resulting from the negligent conduct and the serial breach of contract occur over and over again. He explains that "the storm water management facilities are routinely and regularly discharging water from the pond, out the discharge pipe, and over [his] property causing damages." Kowalski's brief at 28. He specifically claims that "it is a separate tort and a separate breach of contract every time the storm water from the TOA [Planned Residential Development ("PRD")] overwhelms the Kowalski pipe system and floods the Kowalski property." Id. at 26-27.

Mr. Kowalski compares the continuing nature of the damages to his property to those at issue in Miller v. Stroud Twp., 804 A.2d 749 (Pa.Cmwlth. 2002), wherein the Commonwealth Court ruled that the municipality's construction of sewer lines near plaintiff's property, coupled with rainfall, resulted in a continuing trespass of water and fecal matter, which caused damage to plaintiff's property. Mr. Kowalski argues that, like the continuing trespass occurring in Miller v. Stroud Twp., a new cause of action for breach of contract and negligence accrues upon every flooding event on his property.

Mr. Kowalski additionally argues that the trial court should have entered summary judgment in his favor on the breach of contract claim. He points to the Developer's Agreement between TOA, New Sewickley Township, and the New Sewickley Township Municipal Authority, which includes a provision obligating TOA to "perform the work and install the improvements upon the property in accordance with . . . [t]he conditions referenced in the letter regarding Final Approval . . . from the Township Engineer dated 01/15/07 and incorporated herein by reference." Developer's Agreement at 4. The Township Engineer's Letter contains the following provision:

> [Engineer] was provided with a copy of a letter dated 01/15/07 that [TOA] sent to the Township indicating that the developer will be responsible to address various storm water issues associated with Mr. Hoffman's downstream property/facilities should these facilities be negatively impacted by storm water flow from the development.

Engineer's Letter, 1/15/07 at 3.

In the January 15, 2007 letter sent by TOA to New Sewickley Township, it indicated as follows: "If the storm water overwhelms the carrying capacity of the downstream pipe culvert located on the David P. Hoffman property, then [TOA] will replace the existing pipe (or install parallel pipe) to handle the flow." TOA Letter, 1/15/07.

Mr. Kowalski contends that the trial court erred in holding that TOA is not liable on the breach of contract count because Mr. Hoffman did not enforce his rights under the Developer's Agreement. Mr. Kowalski maintains that Mr. Hoffman reported the breaches to TOA, but his complaints were ignored. Mr. Kowalski asserts that, once he became the property owner, he promptly reported the breaches, and thereafter filed suit when TOA refused to comply with the promises made in the Developer's Agreement.

Mr. Kowalski also argues that the above-cited provisions establish that Mr. Hoffman was a third-party beneficiary to the Developer's Agreement, and that Mr. Kowalski, as Mr. Hoffman's successor, is entitled to rely on and enforce the terms of the Agreement. Mr. Kowalski contends that TOA's failure to replace the existing pipe or install a parallel pipe after every flooding event constitutes a separate and actionable breach of the Developer's Agreement. Mr. Kowalski asserts that he has suffered damages as a result of the breaches because the carrying capacity of the piping system on his property is clearly overwhelmed. Finally, he argues that, "because the New Sewickley Township Subdivision and Land Development Ordinance requires communication and

coordination with downstream property owners, the pledge made by TOA was made in order to mollify [Mr.] Hoffman and to induce the Township to grant the PRD subdivision application." Kowalski's brief at 34-35. On this basis, Mr. Kowalski argues that TOA should not be permitted to enjoy the benefits of PRD approval without complying with the conditions imposed by New Sewickley Township in order to obtain PRD approval.

The trial court explained its rationale for entry of summary judgment in favor of TOA and the Condo Association on the breach of contract and negligence claims, as follows:

> The alleged breach was that Defendants failed to "replace the existing pipe or install a parallel pipe to handle the flow." Any breach would have occurred in 2007 when the development was constructed, not in 2012 when Mr. Kowalski purchased the home. The lawsuit filed in 2013 was well beyond the four-year statute of limitations for this claim. . . .
>
> Likewise, with respect to the negligence claim, there is no question that the statute of limitations has run. Pennsylvania law typically requires a party to file a claim of negligence within two years of the date of the occurrence. 42 Pa.C.S. § 5524(2). . . . Again, the [p]laintiff, Mr. Kowalski, stepped into the shoes of the prior owner, Mr. Hoffman, when he purchased the property; he did not get a new statute of limitations regarding the negligence claim.
>
> The record establishes that Mr. Hoffman knew about the flooding in 2007. In his Brief in Opposition to the Motion for Summary Judgment, Mr. Kowalski cited deposition testimony from Mr. Hoffman, where Mr. Hoffman admitted that he noticed the additional flooding right away, as soon as construction on the development started. . . . Mr. Kowalski further noted that this testimony was uncontradicted. . . . The undisputed facts, as presented by Mr. Kowalski, indicate that the downstream property owner discovered the harm, allegedly caused by the Defendant's

actions, in 2007. Mr. Kowalski filed this lawsuit in 2013, which is well beyond the two-year statute of limitations.

The court's decision to grant summary judgment, on both the negligence and the breach of contract claims, is supported by the facts of record. No genuine issue of material fact existed regarding: 1) the date of the alleged contract; 2) the date the alleged negligence [and breach were] discovered; or 3) the date the lawsuit was filed. Since the record was clear on these dates, and Mr. Kowalski failed to file his lawsuit within the time allowed by law, summary judgment [in favor of TOA and the Condo Association] was appropriate on the negligence and breach of contract claims.

Trial Court Opinion, 12/12/17, at 6-7.

In a contract case, a cause of action accrues when "there is an existing right to sue forthwith on the breach of contract." Leedom v. Spano, 647 A.2d 221, 226 (Pa.Super. 1994); see also Thorpe v. Schoenbrun, 195 A.2d 870, 872 (Pa.Super. 1963) (holding that, as a general rule, a statute of limitations begins to run when a plaintiff's cause of action arises or accrues). Viewing the record in the light most favorable to Mr. Kowalski, as the non-moving party, we agree with the trial court's determination that Mr. Kowalski's breach of contract claim is barred by the statute of limitations. That claim was based on Mr. Kowalski's assertion that TOA breached the terms of the Developer's Agreement when it failed to replace the existing pipes installed by Mr. Hoffman, or install parallel pipes to handle the increased flow of surface water runoff from Liberty Hills. See Amended Complaint, 8/2/15, at 26. Here, the evidence of record reflects that, although Mr. Hoffman noticed flooding in 2007 and complained to TOA that his pipes were overwhelmed, TOA did not

replace the existing pipes, or install parallel pipes, as it had promised to do pursuant to the Developer's Agreement. Thus, the contractual breach alleged by Mr. Kowalski accrued in 2007, when TOA first refused to replace the existing pipes or install parallel pipes upon its notification that Mr. Hoffman's pipes were overwhelmed. See Leedom, supra. Accordingly, we affirm the trial court's determination that Mr. Kowalski's breach of contract claim expired in 2011, and is therefore barred by the four-year statute of limitations. See 42 Pa.C.S. § 5525.[4]

We also agree with the trial court's determination that Mr. Kowalski's negligence claim is barred by the statute of limitations. His cause of action for negligence was premised on his assertions that defendants breached their duty of care by failing to design, construct, and maintain a storm water management system that prevented unreasonable water runoff from the Liberty Hills development. That duty was breached in 2007, when Mr.

_____

[4] We are mindful that, when ruling on the cross-motions for summary judgment, the trial court indicated that, in response to Mr. Hoffman's initial complaints, TOA attempted to remediate the flow of excess surface water, but eventually stopped. See Trial Court Opinion, 9/13/17, at 7; see also N.T. Trial, 11/14/17, at 32 (wherein Mr. Hoffman testified that on one occasion, TOA sent ten men to clean up debris from the excess water flow). If Mr. Kowaski could establish that the defendants attempted to remediate the excess surface water flow until sometime after July 2009, then his contract claim might still be viable. However, the trial court did not specify when TOA stopped its remediation efforts, and Mr. Kowalski concedes that TOA breached the Developer's Agreement in 2007, when it failed to install larger pipes or a parallel piping system. See Kowalski's brief at 35.

Hoffman first noticed flooding due to excess surface water flowing onto his property from the Liberty Hills construction. See Thorpe, supra. Accordingly, we agree with the trial court's determination that any negligence claim became time-barred in 2009, when the two-year statute of limitations for negligence claims expired. See 42 Pa.C.S. § 5524(7).[5] Thus, Mr. Kowalski's first two claims warrant no relief.

Trespass

We next address the Condo Association's first claim of error that the trial court erred by reversing the entry of nonsuit on the trespass claim upon post-trial motions on the basis of its finding that Mr. Kowalski established a trespass. See Brown v. Philadelphia College of Osteopathic Medicine, 760 A.2d 863 (Pa.Super. 2000) (appeal does not lie from order denying post-trial motions but rather upon judgment entered following disposition of post-trial motions). Our standard of review in non-jury cases is limited to:

> a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial

_____

[5] Mr. Kowalski argues that, similar to the continuing trespass in Miller v. Stroud Twp., supra, we should regard his claims for breach of contract and negligence as continuing in nature, such that a new statute of limitations begins to run with each flooding event. Notably, Mr. Kowalski points to no legal authority in support of his position, see Pa.R.A.P. 2119(a), and we are aware of none. Presently, no Pennsylvania court has extended the legal theory supporting a continuing trespass to claims for negligence and breach of contract.

judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

Gutteridge v. J3 Energy Grp., Inc., 165 A.3d 908, 914 (Pa.Super. 2017) (citation omitted). Additionally, this Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the evidence "unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." Id. (citation omitted).

In Pennsylvania, specialized rules have been developed as to when an upper landowner may be liable for the effects of surface water running off its property. "The law regards surface water as a common enemy which every proprietor must fight to get rid of as be he may." Laform v. Bethlehem Twp., 499 A.2d 1373, 1378 (Pa.Super. 1985). Under the so-called common-enemy rule,

Our Supreme Court has held that, because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature rise in or flow or fall upon the superior. Therefore, an owner of higher land is under no liability for damages to an owner of lower land caused by water which naturally flows from the one level to the other.

Notwithstanding the above, the right of the upper landowner to discharge water on the lower lands of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities. Thus, if the upper landowner alters the natural conditions so as to

- 15 -

> change the course of the water, or concentrates it at a particular point, or by artificial means . . . increases its volume, he becomes liable for any injury caused thereby.  In other words, it is only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury.

Youst v. Keck's Food Serv., Inc., 94 A.3d 1057, 1073 (Pa.Super. 2014) (internal citations, quotation marks, brackets and footnote omitted).

Where surface waters falling on an upper land have been diverted or changed in a manner that causes legal injury to the lower landowner, the court must determine whether the action concerns a permanent trespass through a change in the condition of the lower land, or whether the action alleges separate, independent injuries to the lower land in the nature of a continuing trespass.[6]  See Sustrik v. Jones & Laughlin Steel Corp., 197 A.2d 44, 46-47 (Pa. 1964); Cassel-Hess v. Hoffer, 44 A.3d 80, 86 (Pa.Super. 2012).  In making this determination, a court must consider a variety of factors, including: (1) the character of the structure or thing which produces the injury; (2) whether the consequences of the trespass will continue indefinitely; and (3) whether the past and future damages may be predictably ascertained. Cassel-Hess, supra at 87.

For a trespass that effects a permanent change in the condition of the land, the statute of limitations begins to run at the time of the original

_____

[6] The statute of limitations for an action sounding in trespass, whether continuing or permanent, is two years.  See 42 Pa.C.S. § 5524(4).

trespass, or at least from the date it should reasonably have been discovered. Sustrik, supra at 47 (citing Restatement of Torts § 162); Cassel-Hess, supra at 86. The possessor of the land may then institute a single action to recover past and future damages for a permanent trespass. Sustrik, supra at 47; Cassel-Hess, supra at 86. Since a permanent trespass "once and for all produce[s] a permanent injury to the land," only the possessor of the land at the time of the trespass has a cause of action for the trespass. Cassel-Hess, supra at 86 (quoting Restatement (2d) Torts § 162 cmt. e); see also id. (quoting Restatement (2d) Torts § 162 ("A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things.")).

Conversely, where it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action, the trespass is continuing.[7] Cassel-Hess, supra at 87 (citing

_____

[7] The Restatement (Second) of Torts defines a continuing trespass as follows:

> The actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and . . . confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.

Graybill v. Providence Twp., 593 A.2d 1314, 1317-18 (Pa.Cmwlth. 1991) (en banc) (holding that a continuing trespass will be found where the defendant's artificial use of his own land does not directly and immediately cause any injury to the property of another, but, coupled with the effects of rainfall results in intermittent and unpredictable consequential damage to another's property)).[8]  The possessor may maintain a succession of actions based on the continuing trespass or treat the continuance of the thing on the land as an aggravation of the original trespass.  See Cassel-Hess, supra at 87 (describing the long understood principle of "'continuing trespass' . . . as conduct that allows an injured party to bring actions for separate, independent injuries"); see also Miller v. Stroud Twp., supra at 754 (relying on Restatement (2d) of Torts, § 161, cmt. e, to conclude that appellants could maintain a succession of actions because the Township failed to remove water and fecal matter resulting from the construction of a sanitary sewer line near appellants' property, or treat the continued flow of water, fecal matter, fungi, mold and bacteria onto their land as an aggravation of the original trespass).

Liability for a continuing trespass is also created by the continued presence on the land of a thing "if the actor, having acquired his legal interest

_____

Restatement (2d) of Torts, § 161, cmt. b; see also Restatement of Torts § 161 cmt. b (substantially the same).

[8] Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive.  See Estate of Brown, 30 A.3d 1200, 1204 n.2 (Pa.Super. 2011).

in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing." Restatement (2d) of Torts § 161(2); see also Restatement (2d) of Torts § 158 (providing that liability in trespass is created where, inter alia, one intentionally fails to remove a thing from the land in violation of a duty).

The defendants initially contend that the trial court erred in granting Mr. Kowalski post–trial relief based on its determination that a trespass is occurring through excess surface water runoff from the Liberty Hills onto Mr. Kowalski's property through an artificial means. The defendants claim that there was no evidence that storm water runoff from the Liberty Hills property was diverted from its natural channel through an artificial means.

We disagree. An upper landowner is liable for the effects of surface water running off his property in two distinct circumstances: (1) where the landowner has diverted the water from its natural channel by artificial means; or (2) where the landowner has unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor. See Laform, supra at 1378. While the owners of higher lands have the right to have the water flowing from their lands discharged in a natural watercourse upon the lower lands, and may increase the flow through the natural and reasonable use of the lands, a large condominium development in a rural area cannot be considered a "natural" use of the land. See Miller v. C.P. Ctrs., Inc., 483 A.2d 912, 915 (Pa.Super. 1984) (holding that the development of

an apartment complex was an artificial use); see also Westbury Realty Corp. v. Lancaster Shopping Ctr, Inc., 152 A2d. 669, 672 (Pa. 1959) (holding that the development of shopping center was an artificial use). Under such circumstances, the developers must make the proper accommodation so as not to place the burden of the increased flow upon the servient tenement. Miller v. C.P. Ctrs., Inc., supra at 915; Westbury, supra at 672.

In the instant case, the Liberty Hills development constitutes an artificial use of the uphill property which was previously Kenny Farm. The development covers twenty-eight acres with impermeable buildings and pavement, including 191 units, roads, sidewalks, patios, roofs, and hard surfaces, all of which prevent natural seepage and increase the flow of surface waters from the development. N.T. Trial, 11/14/17, at 133, 146-48. Accordingly, the evidence of record supports the trial court's determination that TOA altered the flow of the rainwater from the uphill property by developing Liberty Hills and channeling the increased surface water into a storm water management system consisting of a drainage detention pond. See Trial Court Opinion, 12/12/17, at 3; Trial Court Opinion, 9/13/17, at 2. Thus, contrary to the defendants' arguments otherwise, the water from the former Kenny Farm was clearly "diverted from its natural channel by artificial means" upon the development and construction of Liberty Hills. See Laform, supra.

We also disagree with the defendants' argument that, although Mr. Shoup testified that the flow of surface water increased as a result of the

Liberty Hills construction, his testimony did not establish that the development "unreasonably or unnecessarily increased the quantity or changed the quality of the water discharged" onto Mr. Kowalski's property. Condo Association's brief at 13; TOA's brief at 8-9.

The defendants misapprehend the alternate bases for liability in trespass for surface water runoff. As noted previously, an upper landowner is liable for the effects of surface water running off his property when either (1) the landowner has diverted the water from its natural channel by artificial means; or (2) the landowner has unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor. See Laform, supra at 1378 (holding that since "this is not a case of artificial diversion of surface waters . . . we need only consider whether the City caused an unreasonable or unnecessary increase in the water flowing through its drainage swale"); see also Graybill, supra at 316 (finding error where "the trial court applied only the second standard set forth in Laform (unreasonable or unnecessary change in quality or quantity), and overlooked the first (diversion from the natural channel by artificial means)"). The trial court herein properly determined that TOA diverted the water from its natural channel by artificial means. This determination does not involve consideration of the reasonableness of the change in quantity or location of water flowing onto the lower land. See Bretz v. Cent. Bucks Sch. Dist., 86 A3d 306, 316 (Pa.Cmwlth. 2014). Rather, to establish liability under this theory, a plaintiff

need only show that a landowner collected and/or concentrated surface water from its natural channel through an artificial medium and that the water was discharged onto the plaintiff's property in an increased volume or force, however, slight. Id. As Mr. Kowalski satisfied this burden, he was not required to also establish the alternate basis for liability that TOA unreasonably or unnecessarily increased the quantity or changed the quality of water discharged. LaForm, supra at 1378.

The defendants next contend that, to the extent that this matter involves a trespass, it is a permanent trespass rather than a continuing trespass. The trial court rejected this argument, and determined that the excess surface water flowing from Liberty Hills onto Mr. Kowalski's property is a continuing trespass. See Trial Court Opinion, 9/13/17, at 11. As the trial court explained,

> At the time of the development, it was contemplated that water would flow from Liberty Hills through the Hoffman pipe. Significantly, this was done with Hoffman's permission. Thus, although the development of Liberty Hills was permanent and constituted a permanent change on the Defendant's property, the construction of Liberty Hills did not constitute a change or an injury to [Mr.] Kowalski's property. Rather, any change that occurred, if at all, did not occur until the existing Hoffman pipe became overwhelmed with water flow/runoff from the development, that forced additional water onto Kowalski's property. This was not constant or permanent, but varied with the occurrence of storms. . . . Consequently, we find the alleged trespass to be a continuing one[.]

Id. at 11-12.

We agree with the trial court's determination. The record does not evidence a permanent change or permanent injury to Mr. Kowalski's property as a result of the increased surface water flowing from the Liberty Hills development. Cf. Cassel-Hess, supra (holding that the creation of a mosquito-infested lake on the plaintiff's property constituted a permanent trespass); Beach Str. Corp. v. A.P. Constr. Co., 658 A.2d 379 (Pa.Super. 1995) (holding that the dumping of mounds of soil on plaintiff's land constituted a permanent trespass). Rather, since the inception of construction of the Liberty Hills complex, temporary flooding of Mr. Kowalski's property has occurred intermittently and unpredictably after heavy rains. See Trial Court Opinion, 9/13/17, at 12 (finding that the flooding on Mr. Kowalski's property caused by water runoff from Liberty Hills "was not constant or permanent, but varied with the occurrence of storms"). Thus, the trial court properly reversed the entry of nonsuit on the trespass claim based on its determination that this matter involves a continuing trespass to Mr. Kowalski's property. See id.[9] Accordingly, the Condo Association's first issue warrants no relief.

_____

[9] Because we have determined that the trespass is continuing in nature, we find no merit to the Condo Association's second issue, wherein it claims that Mr. Kowalski lacks standing to sue for trespass. As section 162 of the Restatement (Second) of Torts provides:

> A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things, or to members of his household or to their things, caused by any act done, activity carried on, or

Liability for the Continuing Trespass

We next address which parties should be liable for the continuing trespass caused by the excess water runoff from the Liberty Hills development. In the second part of its first issue, the Condo Association claims that the trial court erred in imposing liability upon it for the continuing trespass. Mr. Kowalski, on the other hand, asserts in what we perceive to be his third and fourth issues that the trial court correctly reversed the nonsuit and entered judgment against the Condo Association, but erroneously failed to impose liability on TOA, which he claims is also liable for the continuing trespass.

_____

> condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser.

Restatement (2d) of Torts § 162 (emphasis added). Further, section 157 defines a "possessor of the land" as, inter alia, a person who "in occupancy of land with intent to control it." Restatement (2d) of Torts § 157(a). Hence, for standing purposes in the case at bar, the determinative factor is when Mr. Kowalski began his "occupancy of [the] land with intent to control it." The trial court determined that he purchased the property in March 2012, and moved in shortly thereafter. Trial Court Opinion, 12/12/17, at 3. Thus, the trial court correctly determined that, as possessor of the land, Mr. Kowalski had standing in July 2013 to file the instant lawsuit alleging trespass. See Trial Court Opinion, 9/13/17, at 12.

The Condo Association argues that, as the successor to TOA, it cannot be responsible for TOA's actions in designing and building the Liberty Hills storm water management system. Pointing to the Restatement (Second) of Torts § 158(c),[10] it argues that it did not perform any act that caused storm water to enter Mr. Kowalski's property. It further argues that the two Pennsylvania appellate decisions on which the trial court relied, *Rau v. Wilden Acres, Inc.*, 103 A.2d 422 (Pa. 1954),[11] and *Marlowe v. Lehigh Township*, 441 A.2d 497 (Pa.Cmwlth. 1982),[12] "both involved defendants

_____

[10] Section 158 provides:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
>
> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (2d) of Torts § 158.

[11] In *Rau*, the defendant's farmland was higher than the adjoining farmland of plaintiff. The Court upheld an injunction imposed against the defendant after the upper property was developed in a manner that collected and concentrated surface water, causing increased amounts to flow onto plaintiff's property through artificial channels.

[12] In *Marlowe*, the Township was found liable for a continuing trespass due to excess surface water flowing onto plaintiffs' property that was concentrated through artificial channels constructed by the Township.

who had actively altered the drainage [[about] which the plaintiffs complained." Condo Association's brief at 15. Additionally, the Condo Association contends that, assuming its status as successor to TOA is sufficient to permit the imposition of liability, the trial court "erred when it determined that the Condo Association owned the Liberty Hills common areas generally and the detention pond specifically." Id. at 15. While it concedes that the Declaration of Condominium for Liberty Hills states at Section 6.1(h) that "the [Condo] Association is perpetually responsible for maintenance of the Storm Water Management Plan," it claims that the Declaration is silent as to when such responsibility took effect. Condo Association's brief at 15. Finally, the Condo Association asserts that "there was no evidence that failure to maintain the detention pond, as distinguished from its design or construction, caused the alleged excessive discharge of stormwater [sic] on to Mr. Kowalski's property." Id. at 16.

The trial court determined that TOA designed and built Liberty Hills, and that the Condo Association owns the common areas of the development, including the detention pond that drains onto to Mr. Kowalski's property. See Trial Court Opinion, 12/12/17, at 26-27; Trial Court Opinion, 9/13/17, at 1. In so ruling, the trial court looked to the Declaration of Condominium for Liberty Hills, dated July 3, 2008, which "clearly assign[ed] responsibility for the Storm Water Management System, as a General Common Element, to the [Condo] Association." Trial Court Opinion, 9/13/17, at 13. The Declaration

also provided that the Condo Association "is perpetually responsible for maintenance of the Storm Water Management System." Id. The trial court further explained its decision to impose liability on the Condo Association as follows:

> [T]his [is] a claim for continuing trespass since the pipes were built on the Liberty Hills site, and not the Kowalski property, and the harm occurs each time there is a heavy rain. Since a new trespass occurs each time there is flooding, the trespass action lies against the owner of the property causing the trespass at the time of the trespass. Here, the [Condo] Association owns the common areas of Liberty Hills, including the detention pond, which is collecting and diverting the water causing the flooding. Thus, the cause of action lies against the [Condo] Association.

Trial Court Opinion, 12/12/17, at 26-27.

We agree with the trial court's determination. The evidence presented by Mr. Kowalski established that, since 2008, the Condo Association has owned the common areas of Liberty Hills, including the storm water management system and the detention pond that overflows onto Mr. Kowalski's property. See Trial Court Opinion, 9/13/17, at 13. The fact that the Condo Association did not design or build the storm water management system is of no consequence because the Condo Association's status as owner of the storm water management system since 2008 renders it liable for the flow of excess surface water onto Mr. Kowalski's property. Pursuant to the Restatement (Second) of Torts § 161:

> A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with

> knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing

Restatement (2d) of Torts § 161(2).

Here, the evidence established that the Condo Association was aware of the flooding on Mr. Kowalski's property due to the overflowing pond, but "acknowledge[d] that it did nothing to rectify the problems allegedly arising from the Liberty Hills storm water management system." See Trial Court Opinion, 9/13/17, at 13. Thus, the Condo Association, as the present owner of the storm water management system, is liable for the continuing trespass since it was aware of the excess water runoff from the system onto Mr. Kowalski's property, and failed to abate it. See Restatement (2d) of Torts § 161(2). We therefore affirm the trial court's entry of judgment against the Condo Association on the trespass claim.

We next address TOA's liability for the continuing trespass. Mr. Kowalski points to the testimony of his expert, Mr. Shoup, that TOA's storm water plan failed to account for two acres of impervious surface area in the development, resulting in an underestimated rate of velocity and flow of surface water due to its miscalculations. Kowalski's brief at 38-39. Additionally, "1.74 acres of the two acres flowed directly into the stormwater [sic] management pond . . . which was not constructed per the specifications of the TOA storm water management plan." Id. at 39-40. Mr. Kowalski maintains that "[t]he pond was designed to capture water, hold three feet of the water in the pond, and then release the three fee[t] of water into the ground through infiltration."

Id. at 40. However, he claims that the pond was improperly constructed, such that "instead of draining the bottom three feet of water into the ground . . . the pond was sitting full of water even during dry periods and was . . . only draining down in the soil at a very low rate or a very slow rate, if at all." Id. (internal quotation marks omitted). According to Mr. Kowalski, because the pond water did not drain, it increased the rate and volume of the water discharged from the pond and flowing directly on his property. He claims that, "every time it rains . . . the first drops of water into the pond are immediately sent to the Kowalski tract, flooding his tract." Id. at 41. Kowalski asserts that the trial court incorrectly evaluated the storm water management plan, and failed to properly analyze the engineering evidence.

TOA contends that the evidence established that defendants did not concentrate the storm water runoff onto Mr. Kowalski's property, nor did they substantially increase the rate of discharge onto his property. Rather, TOA argues, the storm water management system discharged the storm water into a pre-existing stream on Liberty Hills' property, which transverses Mr. Kowalski's property downstream.

As noted previously, the trial court determined entry of nonsuit on the trespass claim was error because Mr. Kowalski established that excess water runoff from Liberty Hills constitutes a continuing trespass. In reversing nonsuit on the trespass claim, it further determined that the Condo Association, as the owner of the common areas of Liberty Hills and the storm

water management system, is liable for the trespass. However, in its opinion, the trial court provided no explanation as to why it imposed no liability for the trespass against TOA.

Here, TOA designed and constructed Liberty Hills, and its storm water management system that causes excess surface water to flow intermittently onto the Hoffman/Kowalski property since 2007. However, ownership of the common areas of Liberty Hills, including the storm water management system, was transferred to the Condo Association in 2008. Thus, it is unclear as to whether TOA has the ability to alter that system. Nevertheless, pursuant to the Restatement (Second) of Torts § 161(1), "[a] trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." The comment to § 161 further provides;

> Effect of actor's inability to remove the thing. Since the conduct of the actor in placing the thing on the land is tortious, his responsibility for its presence on the land continues . . . although through subsequent conduct on his part it has now become impossible or impracticable for him to terminate the intrusion on the other's land. In this respect, the liability of one who has tortiously placed a thing on another's land is more stringent than the liability of his transferee . . .

Restatement (2d) of Torts § 161(1), cmt. c. The comment to § 161 provides the following illustrations:

> 1. A, without B's consent or other privilege to do so, erects on his own land a dam which backs up water on B's land. This is a trespass, which continues so long as A maintains his dam in such a way as to flood B's land.

. . . .

      2. The same facts as in Illustration 1, except that after building the dam, A transfers to C his interest in the land on which he had erected the dam. Although A cannot now demolish or reduce the level of the dam or lower the flood gate without committing a trespass against C, he is nevertheless under liability to B for the continuance of the flooding of B's land.

Restatement (2d) of Torts § 161, cmt.

Based on these provisions, § 161 clearly provides for the imposition of liability upon TOA, as the entity which developed Liberty Hills and constructed the storm water management system in a manner which caused excess surface water to flow onto Mr. Kowalski's property. See Lake v. Hankin Group, 79 A.3d 748, 758-59 (Pa.Cmwlth. 2013) (analyzing § 161 and concluding that, because evidence may establish that the alleged trespass of the former owner and developer of property purportedly continues to cause violations of the Clean Streams Law, they could be found liable under that act "even though they no longer have an interest in the property from which the storm water flows").[13] However, we believe that such liability is subject to the applicable statute of limitations.

_____

[13] In Lake, the Commonwealth Court reversed the entry of summary judgment in favor of all defendants on the trespass claim, including the former owner and developer, on the basis that the trial court erred in concluding that the trespass was permanent rather than continuing in nature. See Lake, 79 A.3d at 755. Notably, the former owner and developer had completed construction in 2003, and ownership of the property had been transferred at that time. The Lakes did not file their action against the defendants until 2009. Unfortunately, the Court provided no discussion or analysis as to why the claims against the former owner and developer were not time-barred.

Statute of Limitations

In its third issue, the Condo Association claims that Mr. Kowalski's trespass claim is barred by the statute of limitations. Had we determined that a permanent trespass occurred, the statute of limitations would have begun to run at the time of the original trespass, or at least from the date it should reasonably been discovered. See Cassel-Hess, supra at 87. Presumably, this would have occurred in 2007, when Mr. Hoffman first noticed flooding from the Liberty Hills construction. See Sustrik, supra. However, our conclusion that excess water from the Liberty Hills development constitutes a continuing trespass dictates a different result. As noted previously, a continuing trespass allows an injured party to bring actions for separate, independent injuries. See Miller v. Stroud Twp., supra at 754; see also Lake, supra at 758. Thus, as Mr. Kowalski is entitled to bring an action in continuing trespass every time excess water from the Liberty Hills development floods his property, the trial court correctly determined that his present claim is not time-barred. See Trial Court Opinion, 9/13/17, at 12.

However, we conclude that Mr. Kowalski's continuing trespass claim was timely only with respect to the Condo Association. Although we are unable to find any Pennsylvania law on this point, a majority of courts considering the issue have ruled that, in the context of a continuing trespass, a right of action

exists only for the damages suffered within the statutory period immediately preceding suit. As explained by the Supreme Court of Nebraska:

> a claim for damages caused by a continuing tort can be maintained for injuries caused by conduct occurring within the statutory limitations period. Seen in this light, the "continuing tort doctrine" is not a separate doctrine, or an exception to the statute of limitations, as much as it is a straightforward application of the statute of limitations: It simply allows claims to the extent that they accrue within the limitations period. A "continuing tort" ought not to be a rationale by which the statute of limitations policy can be avoided. But when there are continuing or repeated wrongs that are capable of being terminated, a claim accrues every day the wrong continues or each time it is repeated, the result being that the plaintiff is only barred from recovering those damages that were ascertainable prior to the statutory period preceding the lawsuit.

Alston v. Hormel Foods Corp., 730 N.W.2d 376, 383-84 (Neb. 2007). Accord United States v. Hess, 194 F.3d 1164, 1177 (10th Cir. 1999) ("In trespass cases, where the statute of limitations has expired with respect to the original trespass, but the trespass is continuing, we and other courts have calculated the limitation period back from the time the complaint was filed."); Nieman v. NLO, Inc., 108 F.3d 1546, 1559-60 (6th Cir. 1997) (affirming concept that recovery for continuing trespass damages includes only those damages incurred within the statute of limitations period prior to filing the lawsuit); Tucker v. Southern Wood Piedmont Co., 28 F.3d 1089, 1092 (11th Cir. 1994) (same); California v. Kinder Morgan Energy Partners, L.P., 2016 U.S. Dist. LEXIS 40551, at *9 (S.D. Cal. Mar. 24, 2016) (holding California law limits available damages in continuing trespass and nuisance cases involving real property to the limitations period immediately preceding

the commencement of an action to recover those damages); Woldson v. Woodhead, 149 P.3d 361, 362 (Wash. 2006) (applying a three-year statute of limitations, and holding that continuing trespass damages are available from the beginning of the trespass, but no more than three years before the filing of the lawsuit); Breiggar Props. v. H.E. Davis & Sons, 52 P.3d 1133, 1135-36 (Utah 2002) (holding that in the case of a continuing trespass, the person injured may bring successive actions for damages until the trespass is abated, but recovery is limited to actual injury suffered within the statutory limitations period prior to commencement of each action); Davis v. Laclede Gas Co., 603 S.W.2d 554, 556 (Mo. 1980) (holding that if the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit); McCoy v. Gustafson, 103 Cal. Rptr. 3d 37, 58 (2009) (noting that California's appellate courts have held that when a trespass is continuing, the injured party is entitled to bring a series of successive actions, each seeking damages for new injuries occurring within the period of limitation immediately preceding the filing of the action).

As Mr. Kowalski commenced this action in July 2013, his recovery is limited to actual injury suffered during the two years prior to the filing of this

action (i.e., after July 2011).[14]  Since the Condo Association has owned the common areas of Liberty Hills since July 2008, any liability on the part of TOA would have become time-barred in July 2010, at the latest.  As such, TOA cannot be responsible for any of the injuries or damage sustained by Mr. Kowalski during the time period encompassed by the present action for trespass (i.e., between July 2011 and July 2013).  Accordingly, we affirm the trial court's determination that TOA is not liable for the specific continuing trespass claim encompassed by the present action.

Nominal Damages

In his fifth issue, Mr. Kowalski contends that the trial court erred in awarding nominal damages of $1.00 on the judgment against the Condo Association on the trespass claim.  He points to the trial court's conclusion that causation was not established because Mr. Shoup testified that the same pipe size, 36-42 inches, was necessary to convey excess surface water over Mr. Kowalski's property both before and after the Liberty Hills development.  Mr. Kowalski argues that the trial court's determination disregards the

---

[14] In the context of this case, the damage restriction appears to have no material effect, since the particular flooding damages alleged by Mr. Kowalski within the limitations period are similar to the separate damages caused by prior flooding events occurring before July 2011.  Moreover, he seeks the same remedy for the flooding encompassed by the applicable limitations period; namely, the installation of larger pipes to accommodate the excess surface water flowing from Liberty Hills.

malfunctioning pond which deposits excessive amounts of water on his property at an increased rate, causing flooding. He asserts that he is left with no option but to install the larger pipes and incur costs in excess of $300,000. According to Mr. Kowalski, there "is no dispute that the surface water from TOA flows through the stormwater [sic] management facilities and is deposited on [his property] at an increased rate," requiring reversal of the nominal damages award on its trespass claim against the Condo Association. Id. at 44.

We agree. To establish liability, a plaintiff need only show that a landowner collected and/or concentrated surface water from its natural channel through an artificial medium and that the water was discharged onto the plaintiff's property in an increased volume or force, however, slight. Rau, supra at 423-24; Laform, supra at 1378; Marlowe, supra at 501. Here, the trial court found as fact that, as a result of the development of Liberty Hills, surface water was collected and diverted to a detention pond that overflowed, resulting in excess surface water flowing onto Mr. Kowalski's property, thereby increasing the total volume and causing flooding. See Trial Court Opinion, 12/12/17, at 3. These findings simply cannot be reconciled with the trial court's conclusion that Mr. Kowalski has not established an entitlement to compensatory damages. Under the common enemy rule, Mr. Hoffman was only required to accept the surface waters flowing onto his property as a result of rain falling onto the Kenny Farm in its natural state.

As the developer of Kenny Farm, TOA was required to establish a storm water management system:

> Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required:
>
> (1) to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or
>
> (2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

Pennsylvania's Storm Water Management Act, § 13.

As the lower landowner, Mr. Hoffman was under no obligation to construct a storm water management system for the uphill property. Thus, the fact that, in 1982, he opted to submerge the stream running through his property from Kenny Farm is of no consequence. Nor is the fact that, in so doing, he used pipes that would not, under present engineering standards, accommodate a 100-year storm event. See Laform, supra (addressing engineering standards applicable in 1974 recommending that storm water disposal facilities be designed to accommodate a ten-year storm).[15]

_____

[15] Indeed, Mr. Hoffman testified that the stream on his property was an intermittent, seasonal stream and that, after submerging the stream in 1982-1983, the pipes were overwhelmed by surface water from the Kenny Farm on

In ruling that Mr. Hoffman should have installed thirty-six to forty-two inch pipes in 1982, some twenty-five years before TOA began construction of Liberty Hills, the trial court unfairly and improperly shifted the burden of implementing a storm water management system from TOA to Mr. Hoffman and his successor, Mr. Kowalski. As the developer of the Liberty Hills condominium complex, TOA alone was responsible for designing and constructing a storm water management system to protect the Hoffman property from injury or damage. See Westbury, supra at 672 (holding that developers of higher lands, when making an artificial use of the land such as the construction of a shopping center, "must make the proper accommodation so as to not place the burden of the increased flow upon the servient tenement"). Clearly, TOA failed to do so. We therefore conclude that the trial court erred in determining that Mr. Kowalski was entitled to nominal damages only. Accordingly, we vacate that award and remand for a new trial as to compensatory damages.

Cross Claim for Indemnity Against TOA

We must next address the Condo Association's fourth issue, addressing its cross claim for indemnity against TOA. The trial court conceded that its entry of judgment against the Condo Association on the trespass claim did not

_____

only two occasions prior to the development of Liberty Hills in 2007. N.T. Trial, 11/14/17, at 27-28.

negate its cross claim against TOA. However, it reasoned that "since this case is only about nominal damages, we do not believe a new trial is warranted to determine the cross claim between the Defendants." Trial Court Opinion, 12/12/17, at 27. In light of our determination that compensatory damages are warranted, this reasoning must be reevaluated.

The Condo Association contends that, because its cross claim for indemnity against TOA is still viable, the trial court erred by not ordering a new trial on that claim since the entry of judgment against it on the continuing trespass claim will be entitled to res judicata or collateral estoppel effect in any future lawsuits brought by Mr. Kowalski or his successors in interest. The Condo Association further asserts that, had a new trial been granted, its witnesses would have testified that the Condo Association had not accepted ownership of any portion of the Liberty Hill storm water management system, and that representatives of TOA instructed the Condo Association to take no action with respect to the detention pond. Condo Association's brief at 16.

Given our determination that remand is necessary for the entry of an award of compensatory damages against the Condo Association, we agree that a new trial is warranted on the Condo Association's cross claim for indemnity against TOA.

We therefore affirm the entry of judgment on the trespass claim against the Condo Association, reverse the award of nominal damages, remand for a

new trial as to damages and on the Condo Association's cross claim against TOA.

Judgment affirmed in part and reversed in part, case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2019