J-A21037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHARLES LEFEVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HORSEPOWER ENTERPRISES, LLC | : | No. 1824 MDA 2024 |

Appeal from the Judgment Entered March 17, 2025
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-20-02229

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 02, 2025**

Appellant, Charles Lefever (hereinafter, "Lefever") appeals from the March 17, 2025 judgment entered on the verdict in favor of Appellee, Horsepower Enterprises, Inc. (hereinafter, "Horsepower"), and against Appellant, in the action Appellant brought against Appellee for $537,204.84, which was the sum he paid Appellee to build a custom hotrod from a 1934 Ford Cabriolet body that Appellant purchased on eBay. After careful review, we affirm the judgment.

The relevant facts of this case, as gleaned from the certified record, are as follows: Lefever is a former businessman who resides in Palm City, Florida with his wife, but grew up in in Lancaster County, Pennsylvania, where he was

---

[*] Former Justice specially assigned to the Superior Court.

familiar with Horsepower Enterprises, Inc. On July 13, 2012, Lefever sent an email to Greg Sangry, the General Sales Manager at Horsepower, to inquire about building a classic hot rod from the 1937 Ford Cabriolet that he purchased on eBay. On April 26, 2013, Lefever emailed Sangry a list of things he wanted for a car, and conveyed to Horsepower that it was important to him that the car had to be a "winner." After arranging for the car's delivery to Horsepower, Lefever and his wife went to Horsepower in April 2013 to meet with Sangry and Gerek Brodfuhrer, the original project manager for the vehicle, to discuss restoring the car. Lefever testified that he was aware that the cost to build a car from scratch could be as much as $160,000.00 to $200,000.00, which did not frighten him because his desired orange paint job alone would be costly. Lefever gave Horsepower a $20,000.00 dollar check to commence the work.

There was no written contract to restore the car; the work was done on a time and materials basis, with invoices sent to Lefever initially on a monthly basis and then later on a bi-weekly basis. Horsepower would send pictures and a video link with the invoices to show the progress on the car, and Lefever communicated frequently with Horsepower by email.

At some point, Lefever became upset with the amount of time it was taking to complete the car, but indicated that he was not upset about the cost of the restoration project. In addition to picking the type of car to build, Lefever made the final choices regarding the customization of the car including

- 2 -

the suspension, transmission, the chrome, the orange paint color, the interior work, the wheels, hood rods, and air ride suspension. Brodfuhrer testified that when he was at Horsepower from 2013 to 2017, Lefever came in to see the car twice a year.

In May 2017, Caroline Ecklin became the General Manager at Horsepower, and in July 2017, both Brodfuhrer and Sangry left the company. At that point, the car had been at Horsepower over four years and was still not completed. Ecklin was aware that the car had been taking too long to be completed and promised Lefever she would put more team members on his car as they became available. Ecklin further testified that further delay was caused when the upholsterer, Tom Eberhardt, became ill. Lefever also made a last-minute change to the car by asking for pinstriping although Ecklin tried to convince him not to do it. Horsepower eventually found someone to do the work.

After a newspaper article came out in September 2019 regarding the car's restoration, Lefever told Ecklin to make sure the car is prepped and ready and discussed with them what shows he should take the vehicle to. The car was shown in Lexington, Kentucky; in York County, Pennsylvania where it got an Honorable Mention, and in Ocean City, Maryland, where it got 6th place. On October 14, 2019, Lefever sent an email to Horsepower congratulating them on the 6th place win, but later claimed he did so only because "You don't whip a dog when it's bad." Thereafter, on October 25, 2019, Lefever sent an

email to Horsepower saying he just got the appraisal and inspection report completed on the car and it scored a number #1 in all categories. The appraisal came in at $295,810.00.

Lefever testified that what made him finally pull the car from Horsepower was when a friend emailed him a newspaper article, in which an employee of Horsepower is quoted as saying "the car is not really meant to be driven because it doesn't handle well going much faster than 40 miles per hour. But that's okay with Lefever." At trial, the employee who was quoted in the newspaper article, Daniel King, testified that he did not tell the news reporter that the car would not feel safe driving over 40 mph. The employee explained that the car is an "art piece" and going over 35 would seem criminal if he had gotten a rock chip and the whole panels would have to be repainted. Lefever also testified that he did not take the car back from Horsepower when he initially became dissatisfied because he did not want the car to become an "orphan."

The Lefevers came to Horsepower to see the car when it was nearly completed and indicated that they were happy with it. Lefever has not had any additional work done to the car since putting it into storage nor has he tried to sell it. The car took approximately 6 years to complete, and the total amount of payments made by Lefever to Horsepower was $537,204.84.

The trial court summarized the relevant procedural history of this case as follows:

On February 26, 2020, [Lefever] filed a nine-count complaint against [Horsepower]. For each count, irrespective to the correct measure of damages, Lefever demanded $537,204.84 which was the sum he paid to build a custom hotrod from a 1934 Ford Cabriolet body he bought on e[B]ay. A bench trial was held beginning on August 28, 2024 and concluding on August 30, 2024. Lefever testified by video deposition.

At the conclusion of trial, the parties were directed to file proposed findings of fact and conclusions of law, which the parties did on November 4, 2024. Lefever's final conclusion was that he was entitled to $537,204.84 pursuant to each one of his claims. On November 18, 2024, the court's verdict was recorded finding against Lefever and for Horsepower on all nine counts. On November 29, 2024, Lefever filed a motion for post[-]trial relief and supporting brief which was denied by the trial court on November 3, 2024. On December 16, 2024, Lefever timely filed the notice of appeal.

Trial court opinion, 2/12/25 at 1-2 (footnotes and extraneous capitalization omitted).[1]

On appeal, Lefever raises the following issues for our review:

1. Did the[] trial court err when it ruled that [Lefever] had not proved a claim under the Unfair Trade Practices Act?

2. Did the trial court err when it ruled that [Lefever] had not proven fraud by Horsepower Enterprises?

3. Did the trial err when it ruled that [Lefever] had not proven a claim conversion[?]

_____

[1] Lefever and the trial court have complied with Pa.R.A.P. 1925.

- 5 -

4.      Did the trial court err when it found that [Lefever] had not proven a claim for breach of contract?

5.      Did the trial Court err when it ruled that [Lefever] had not proven a claim for negligence and negligence *per se*?

6.      Did the Trial Court err when it ruled that [Lefever] had not proven a claim under the Magnusen Moss Warranty Act?

7.      Did the trial court err when it found that [Lefever] had not proven a claim for breach of warranty?

8.      Did the trial court err when it ruled that [Lefever] had proven a claim for unjust enrichment?

Appellant's brief at unnumbered, § IV.

Our standard of review of a non-jury trial

is limited to determining whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. In making this determination, we view the evidence and all inferences derived from the evidence, in the light most favorable to the victorious party. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent an error of law or abuse of discretion.

***Voracek v. Crown Castle USA Inc.***, 907 A.2d 1105, 1107 (Pa.Super. 2006) (citations and internal quotation marks omitted), ***appeal denied***, 919 A.2d 958 (Pa. 2007). This Court has long recognized that we will respect a trial court's findings with regard to the credibility and weight of the evidence "unless the appellant can show that the court's determination was manifestly

erroneous, arbitrary and capricious or flagrantly contrary to the evidence." ***Kowalski v. TOA PA V, L.P.***, 206 A.3d 1148, 1160 (Pa.Super. 2019) (citation omitted).

On appeal, Lefever raises a litany of claims based on fraud, conversion, breach of contract, unjust enrichment, negligence and negligence ***per se***, breach of contract, breach of warranty, and violations of the Magnusen Moss Warranty Act[2] and the "catchall" provision of the Unfair Trade Practices and Consumer Fraud Law.[3] ***See*** Appellant's brief at 20-33.

Instantly, the trial court authored a comprehensive, 32-page opinion wherein it found in favor of Horsepower and against Lefever on all nine counts of the complaint. Specifically, the trial court found that Lefever's testimony as a whole was not credible and this appeared to the court to be a case of "buyer's remorse." The trial court also concluded that the evidence demonstrated that Lefever was actively involved in the rebuilding and customization of the 1937 Ford Cabriolet and that he was happy with the car until it did not win a first place award after a mere three car shows. The trial court noted that according to Lefever's own expert witnesses, the things that hurt the car's ability to win at the car shows were, ***inter alia***, the choice of color, pinstriping, large gauges, and body style chosen, but these were all

---

[2] 15 U.S.C. § 2301 ***et seq.***

[3] 73 P.S. § 201-2(4)(xxi).

things that Lefever elected, and that Horsepower built the car Lefever wanted. *See* trial court opinion, 2/12/25 at 16-32.

The trial court further noted that despite Lefever's claim that Horsepower was just waiting for him to die, it found no evidence that Lefever was being "tricked or deceived," and instead, the record shows that he was pleased with the rebuilding and customization of the car. The trial court agrees with Lefever that Horsepower took an excessively long time to complete the project, but there was no agreed-upon date for completion and Lefever – a successful and savvy businessman – should have been aware of the importance of putting things into writing. *Id.*

The trial court also found that a prior stroke Lefever had suffered did not impair him cognitively, and there was no reason given by either Lefever or his wife that they did not realize how much money was being spent on the car's build. The trial court also found that Lefever failed to give any credible reason as to why they were unable to remove the car from Horsepower sooner and take it to another customization shop. *Id.*

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned analysis of the trial court, it is our determination that Lefever's claims on appeal warrant no relief and the trial court opinion properly disposed of all of his issues. Accordingly, we adopt the comprehensive February 12, 2025 opinion of the Honorable Jeffrey A. Conrad as our own for purposes of this appellate review. The parties are

instructed to attach the opinion of the trial court in any filings referencing this Court's decision.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: _12/02/2025_