J-A06033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRIAN KOWALSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TOA PA V, L.P., AND TRADITIONS OF | : | No. 559 WDA 2021 |
| AMERICA AT LIBERTY HILLS | : | |
| (BEAVER) CONDOMINIUM | : | |
| ASSOCIATION | : | |

Appeal from the Judgment Entered April 30, 2021
In the Court of Common Pleas of Beaver County Civil Division at No(s):
11131-2013

| | | |
|---|---|---|
| BRIAN KOWALSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TOA PA V, L.P., AND TRADITIONS OF | : | |
| AMERICA AT LIBERTY HILLS | : | |
| (BEAVER) CONDOMINIUM | : | No. 590 WDA 2021 |
| ASSOCIATION | : | |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered April 30, 2021
In the Court of Common Pleas of Beaver County Civil Division at No(s):
2013-11131

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED:  July 12, 2022**

_____

[*] Retired Senior Judge assigned to the Superior Court.

In this action, which was commenced in 2013 in the of Court of Common Pleas of Beaver County, plaintiff/property owner Brian Kowalski ("Kowalski") brought claims against the developer of a tract of land situated uphill from his property, TOA PA V, L.P. ("Developer") and the condominium association for the development ("Association") (together, "Appellees"). The development is called "Traditions of America at Liberty Hills (Beaver)" ("Liberty Hills" or "Development").[1] Kowalski claimed generally that water runoff from the Development overwhelms the storm water pipe and causes flooding on his property.

Before this Court are the appeal and cross appeals from the April 12, 2021 amended Order of the trial court which, following remand in 2019 from this Court, determined: (1) the amount of actual damages to award Kowalski for the trespass of the Association; and (2) whether the Association is entitled to indemnification from the Developer. The trial court entered an order awarding Kowalski specific costs to repair his land to its condition before the trespass, and determined that the costs of such repair should be borne by the Association. After careful review, we affirm the trial court.

Relevant facts and procedural history are set forth in both the March 27, 2019 opinion of this Court and the 2017 and 2020 trial court opinions. In

---

[1] The Development covers twenty-eight acres with impermeable buildings and pavement, including 191 units, roads, sidewalks, patios, roofs, and hard surfaces. N.T., 11/14/17, at 133, 146-48.

its 2019 opinion, our Court quoted portions of the trial court's opinion following

the first trial, as follows:

> Mr. Kowalski acquired the property, that he claims is being flooded, when he purchased it at a Sheriff's sale on or about March 12, 2012.  The previous owner, David Hoffman, purchased the property, virtually undeveloped, in 1977.  At first, Mr. Hoffman lived in the dilapidated farmhouse, which he later remodeled.  While he lived there, Mr. Hoffman installed a piping system to collect storm water through the valley on his property uphill to the Kenny Farm, which is the area where Liberty Hills Condominiums are now located.  From 1982 to 1983, over the course of a year and a half, Mr. Hoffman buried a natural stream on the property, using 12-inch to 24-inch underground pipes.  These pipes were used to carry water runoff from the uphill properties, in the area of Kenny Farm, across his property, to the Crow's Run Creek.  Mr. Hoffman started the drainage system up at the ravine with a 12-inch pipe, and as it progressed down through the valley, he increased to an 18-inch pipe and ended up with a 24-inch pipe down at Crow's Run Creek.  He installed catch basins along the way.  He also removed all of the trees, and then cleared the property to make a pond and build a new residence.  Over the course of the next several years, he constructed the pond, gazebo and residence on the property, and he lived there until he started to experience financial difficulties around 2005 or 2006. He vacated the property following a mortgage foreclosure in 2009.
>
> In 2007, while Mr. Hoffman was still living there, New Sewickley Township and Economy Borough approved [the Developer's] plan to develop the Liberty Hills Condominium site on the Kenny Farm located uphill from the Hoffman property. As part of the development, [the Developer] constructed a detention pond at the Liberty Hills Condominium site to detain the water flow from Liberty Hills that drained onto the Hoffman property to Crow's Run Creek.  Mr. Hoffman raised concerns about the development to both [the Developer] and New Sewickley Township. The development is located partially in New Sewickley Township and partially in Economy Borough.  Both municipalities approved [the Developer's] storm water management plan prior to construction.
>
> Since the [Development was] built, the parties have disagreed about the nature and extent of the water runoff from the

[D]evelopment, and how, or whether it has adversely affected the Hoffman/Kowalski property. Prior to buying the property, Mr. Kowalski lived only a few miles away; he drove by it a couple of times per week, since 2006 or 2007. Mr. Kowalski was aware of flooding issues on the property before he purchased it. From 2009 to 2012, the property remained vacant. Mr. Kowalski bought the property at the Sheriff's sale in March 2012 and moved in shortly thereafter. Although the home needed some work because it sat vacant for a few years, the home was habitable.

Mr. Kowalski filed this lawsuit against [the Developer] and [the Association] in July 2013, claiming that water runoff from [the Development] overwhelms the storm water pipe and causes flooding on his property. [He asserted claims sounding in breach of contract, negligence, trespass, nuisance, and a violation of the Storm Water Management Act. The [Association] filed a cross-claim for indemnity against [the Developer]. [The Developer and the Association] claim that any flooding on the Kowalski property is caused by Mr. Hoffman's burying of the natural stream, using a pipe that was too small to handle the natural storm water runoff. They also allege that the remedy Mr. Kowalski seeks to fix the flooding on his property was necessary before any construction at [the Development], and as such, he has suffered no harm caused by their actions.

***Kowalski v. TOA PA V, L.P.***, 206 A.3d 1148, 1153-54 (Pa. Super. 2019) (quoting Trial Court Opinion, 12/12/17, at 2-5 (citations to the record, footnotes, and some brackets omitted)).

At the initial trial, held in November 2017, the parties filed cross-motions for summary judgment, and the trial court granted partial summary judgment in favor of the Developer and the Association on the breach of contract and negligence claims, claims the trial court adjudged were barred by the relevant statute of limitations. The case then proceeded on the remaining claims, for trespass, nuisance, and a violation of the Storm Water Management Act, with Kowalski seeking damages in excess of $300,000. Initially, the trial court

granted oral motions by both the Developer and the Association for a nonsuit on Kowalski's claims for trespass, nuisance, and a violation of the Storm Water Management Act, confirmed by a written order on November 16, 2017. However, the trial court subsequently filed an opinion and order, on December 12, 2017, granting in part and denying in part post-trial motions filed by Kowalski. In that order, the trial court affirmed (1) the entry of summary judgment on the breach of contract and negligence claims and (2) the entry of nonsuit on the nuisance and Storm Water Management Act counts. However, the trial court determined that the entry of nonsuit on the trespass claim was in error, reversed that ruling, and entered judgment in favor of Kowalski on his trespass claim against the Association, awarding him nominal damages of $1.00.[2]

Kowalski appealed and the Association cross-appealed.[3] This Court affirmed the trial court's determination that both Kowalski's breach of contract and his negligence claims were barred by the statute of limitations. Regarding the Association's claim that the trial court erred in finding that Kowalski

_____

[2] The trial court reasoned that the evidence at trial had established that the remedy Kowalski demanded, namely the construction of 36-inch and 42-inch pipes to manage the storm water on his property at a cost in excess of $300,000, was required even prior to the construction of the Development; therefore, Kowalski had failed to show a nexus between the trespass and the damages sought and to allow recovery would give him a 'windfall'. "Having established a trespass, but not compensatory damages, Mr. Kowalski was entitled to an award of nominal damages." Trial Court Opinion, 12/11/17, at 19.

[3] The Developer, who was not found liable for trespass, did not file an appeal, but submitted briefs for the Court's consideration.

established a trespass, our Court addressed and disposed of the arguments of the Developer and the Association, finding that:

> [T]he evidence of record supports the trial court's determination that [the Developer] altered the flow of the rainwater from the uphill property by developing Liberty Hills and channeling the increased surface water into a storm water management system consisting of a drainage detention pond. Thus, contrary to the defendants' arguments otherwise, the water from the former Kenny Farm was clearly "diverted from its natural channel by artificial means" upon the development and construction of Liberty Hills."

***Kowalski***, 206 A.3d at 1162 (citation omitted). This Court then considered whether the trespass is "continuing" or "permanent," ultimately concluding that Kowalski's trespass claim is for a "continuing trespass" (the property only experiences flooding when it rains) and, under the Restatement (2d) of Torts, the Association "is liable for the '"continuing trespass"' occurring on Mr. Kowalski's property because it owned the Liberty Hills storm water management system, knew that it was causing an increased discharge of surface water on Mr. Kowalski's property, and failed to abate it." ***Id***. at 1165.

The Court further held that the Developer *would* be liable for the "continuing trespass" because "it developed Liberty Hills and constructed the storm water management system in a manner which caused excess surface water to flow onto Mr. Kowalski's property," but that it was subject to the statute of limitations for trespass actions, and declined to enter judgment against the Developer. ***Id***. at 1167. Finally, our Court reversed the award of nominal damages on the trespass claim against the Association, instructing

that actual damages are the correct measure of damages, and remanded; we explained that "given our determination that remand is necessary for the entry of an award of compensatory damages against the [Association], we agree that a new trial is warranted on the [Association]'s cross claim for indemnity against [the Developer]." *Id*. at 1171.

In its opinion following the non-jury trial held on the issues on remand, the trial court determined that Kowalski was not entitled to a damage award that encompassed the replacement of pipes installed by the previous owner of his property, providing the following analysis:

> The evidence of record shows that prior to the development of Liberty Hills, surface water naturally flowed from the Kenny Farm to an unnamed tributary that traversed Mr. Hoffman's property. In 1982 and 1983, Mr. Hoffman buried the unnamed tributary, installed 12-24 inch pipes to collect the surface water flowing from the Kenny Farm, and deposited the water from those pipes into Crow's Run Creek. Mr. Hoffman testified that from 1982 until approximately 2007, the surface water overwhelmed the 12-24 inch pipes on only one or two occasions. Mr. Kowalski claims that the 12-24 inch pipes are now overwhelmed several times per year, with more dramatic flooding occurring in the spring months. As a remedy, Mr. Kowalski seeks the cost to replace the 12-24 inch pipes with 36-42 inch pipes.
>
> Significantly, however, Mr. Kowalski's expert testified that 36-42 inch pipes were needed before and after the development of Liberty Hills to accommodate a 100-year storm event. The amount of surface water that flowed onto Mr. Kowalski's property before the development of Liberty Hills is the natural flow of surface water from atop the hillside onto his property. A lower landowner, such as Mr. Kowalski, must accept the natural flow of water from another's land. The evidence shows that the natural flow of surface water before the development of Liberty Hills overwhelmed the 12-24 inch pipes installed by Mr. Hoffman. The resulting overflow is the amount of surface water that Mr. Kowalski must accept because nature requires it. If the Court

were to award the costs of installing the larger pipes, that would not only correct the excess flow of surface water onto Mr. Kowalski's property from the development of Liberty Hills, but it would also correct the flow of surface water that nature dictates – a remedy that would more than compensate Mr. Kowalski for his loss attributable to the continuing trespass. It would, in fact, provide a windfall.

Trial Court Opinion, 12/2/20, at 13-14 (record citations omitted.)

The trial court determined it more appropriate to award $1000 for the cost of installing a steel plate to narrow the orifice in the detention pond to five inches[4] and $38,181 for the cost of installing a swale on Kowalski's property that leads to Crow's Run Creek. Finally, the trial court found that the Developer was responsible to indemnify the Association for the damages awarded and costs incurred in connection with the lawsuit,[5] and scheduled a hearing on the Association's costs as they related to indemnification. Order, 12/3/20. The Developer and the Association thereafter entered into a

---

[4] The remedy of a reduction in the size of the outflow drain/orifice in the retention pond from 8 inches in diameter to 5 inches in diameter was first discussed at the initial trial on November 14, 2017, when Kowalski testified that he had complained to the Department of Environmental Protection (DEP) and subsequently met with them in 2012 regarding stormwater runoff, and the remedy had been suggested to DEP. N.T., 11/14/17, at 67-68. **See also** Developer's Proposed Findings of Fact, No. 47; N.T., 6/11/20, at 62, 106-07 (testimony of Developer's witness, engineer Matthew Schmidt).

[5] The trial court explained that the Developer, as declarant pursuant to the Uniform Condominium Act, relinquished control of the Association on September 30, 2013. Trial Court Opinion, 12/3/21, at 17. Kowalski's continuing trespass claim encompasses the period dating from his purchase of the property, in March 2012, to the date he filed his lawsuit in July 2013; thus the tortious conduct Kowalski alleged occurred during the period of declarant control.

settlement agreement resolving various claims between them including, *inter alia*, the Association's indemnity cross-claims against the Developer. ***See*** Stipulation, 4/9/21.

On appeal, Kowalski presents the following questions for review:

1. Whether the trial court erred in refusing [Kowalski] an opportunity to present evidence at the new trial limited to damages.

2. Whether the trial court erred in permitting [the Association] to present liability evidence when liability had already been established by the trial court, and affirmed by the Superior Court.

3. Whether the trial court erred in awarding damages to [Kowalski] for the [] Association trespass consisting of remedial measures to [Kowalki's] property and not for the trespass itself. Also, whether the trial court erred in not abating the trespass when it did not [require the Association] to correct the deficiencies associated with its storm water management system.

4. Whether [the Developer] had/has standing liability [to produce] evidence at trial notwithstanding that judgment had already been entered in favor of [Kowalski].

Kowalski's First Step Brief at 5-6. The Developer and the Association, as Appellees/Cross Appellants, present the following questions for review:

A. Whether the trial court's decision violated due process by refusing to consider the evidence presented by Developer on the issues of liability and causation.

B. Whether the evidence the court found credible supports a finding that defendants committed a trespass.

C. Whether the court erred in concluding that Kowalski suffered a trespass on his property beginning in July 2011 when he did not purchase the property until March 12, 2012.

D. Whether the damages claimed were caused by the actions of the defendant.

E. Whether it was error to preclude Plaintiff to offer additional evidence of the cost to construct a drainage pipe.

F. Whether it was error to allow Developer to participate in the case and offer evidence.

G. Whether it was error for the court to award remedial damage.

H. Whether Developer has standing in this action.

Appellees' Brief at v. We begin with the applicable legal principles that inform our review.

> The role of an appellate court in reviewing the trial court's decision in a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue ... concerns a question of law, our scope of review is plenary.

*Richards v. Ameriprise Financial, Inc.*, 217 A.3d 854, 862 (Pa. Super. 2019).

As an initial matter, we address Kowalski's second issue, together with Appellees' second and third issues, as each relates to whether the trial court erred in finding that a trespass occurred. The trial court at the original trial

found that Kowalski had established a trespass, and this finding was affirmed by our Court on appeal. Both the trial court and this Court, on appeal, ably elucidated the established law in Pennsylvania as to when an upper landowner may be liable for the effects of surface water running off its property. "[A]n upper landowner is liable for the effects of surface water running off its property when **either** (1) the landowner has diverted the water from its natural channel by artificial means; **or** (2) the landowner has unreasonably or unnecessarily increased the quantity or changed the quality of water discharged upon his neighbor." **Kowalski**, 206 A.3d at 1162 (citing **Laform v. Bethlehem Township**, 499 A.3d 1373, 1378 (Pa. Super. 1985)). Our Court opined that both the Developer and the Association misapprehended the alternate bases for liability in trespass for surface water runoff and noted that the trial court had properly determined that the Developer diverted the water from its natural channel by artificial means when it constructed the detention pond at the site of the Development. **Id**. at 1162-63. The Court explained that the determination as to whether water was diverted from its natural channel by artificial means does not involve consideration of the reasonableness of the change in quantity or location of water flowing onto the lower land. **Id**., at 1163.

Here, Appellees seek to relitigate the issue of trespass; however, they are precluded from doing so by the law of the case doctrine. This doctrine:

> refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court. ... Among

the related but distinct rules which make up the law of the case doctrine are that: ... (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]

**SmithKline Beecham Corp. v Stop Huntingdon Valley Animal Cruelty USA**, 959 A.2d 352 (Pa. Super. 2008), **see also Commonwealth v. Starr**, 664 A.2d 1326 (Pa. 1995)). Quite simply, the question of whether Appellees committed a trespass was resolved by a previous panel of this Court. Notwithstanding the entreaties of the parties to the present appeal, we may not revisit this issue in the present appeal.

Kowalkski also argues that the trial court erred, both in refusing to allow him to present additional evidence at the new trial on remand regarding his damages and in permitting the Association to present liability evidence; conversely, Appellees argue they were denied due process because the trial court refused to consider the evidence they presented at the trial on remand on the issues of liability and causation. Kowalksi's First Step Brief at 27-32; Appellees' Brief at 4-9. These arguments lack merit.

At the initial trial, Kowalski offered his own testimony, together with a lengthy video, as well as extensive testimony from a professional engineer, Scott Shoup, who had served as the engineer for Economy Borough, where the Development is located, and as such, had approved its stormwater management plan. Shoup prepared a stormwater runoff analysis for Kowalski in 2014, and amended it in 2015. 2017 Trial Exhibit H. Kowalski also presented the testimony of Sean Gulbin, of Independence Excavation, who

- 12 -

prepared a bid, based on drawings prepared by Shoup, for the installation of a 36-42" stormwater piping system, at a total cost of $349,465. 2017 Trial Exhibits E and F. Kowalski presented the testimony of Hoffman, the previous owner of his property and the individual who buried the natural swale and unnamed stream on his property and installed the underground system consisting of 12-24 inch pipes in 1982-1983. N.T., 11/14/17, at 21-45. Hoffman testified, *inter alia*, that prior to the development of Liberty Hills, and before he installed the underground pipes, when it rained, water flowed down into the natural swale on his property and into the Crow's Run tributary. **Id**. at 43.

Pursuant to a notice to attend issued to the Developer by Kowalski, the Developer designated two additional witnesses to testify for Kowalski: Mike McAneny, the Vice-President of the Developer's Western region,[6] and Mark Lesnick, a project manager at Hampton Technical Associates, the engineering firm used by the Developer, who worked on the Liberty Hills condominium development. The exhibits about which the Developer's representatives were to testify related to complaints Kowalski made to the Department of Environmental Protection ("DEP") and communications between Hoffman and the Developer in 2007 wherein the Developer allegedly pledged to provide a

_____

[6] At the trial, counsel for the Developer explained to the court that McAneny had been provided as a witness because the Developer's employees who were most involved with the case were no longer employed there, and because McAneny had the most knowledge concerning the Liberty Hills site. N.T., 11/14/17, at 84.

- 13 -

diversionary channel to capture seepage from the stormwater detention pond if necessary; these exhibits were ultimately ruled inadmissible. However, Lesnick did testify that despite Kowalski's complaints to DEP, DEP did not require any changes to the stormwater facilities for the Liberty Hills site. N.T., 11/14/17, at 100-101. We find that Kowalski had ample opportunity to present evidence regarding his damages at the initial trial, and on remand, the trial court was within its discretion in limiting Kowalski's witnesses to Kowalski himself.

Relatedly, Appellees argue that they were denied due process when the trial court refused to consider evidence admitted for all issues before the court, including whether Kowalski had proven its alleged damages were the proximate result of their conduct, and whether in fact a trespass was committed. Appellees' Brief at 4. We disagree.

As previously stated, the trial court's initial determination of liability for trespass was affirmed by this Court in March 2019, **Kowalski**, 206 A.3d at 1162, and the trial court on remand was bound by that determination. Neither the Association nor the Developer appealed our decision. This Court vacated the trial court's award of nominal damages for the trespass and remanded for a new trial as to compensatory damages. Our Court explained that because the trial court had awarded only nominal damages for the Association's trespass, no new trial was warranted to determine the cross claims between the Association and the Developer. **Id**. at 1171. Our Court noted the

Association's contention on appeal that, since the entry of judgment upon it for the continuing trespass would be entitled to *res judicata* in any future lawsuits brought by Kowalski, a new trial on its indemnity claims against the Developer was warranted and ordered a new trial as to the Association's cross claim against the Developer. *Id*.

The trial court on remand duly complied with our directives, and agreed to consider evidence from the Association and the Developer regarding damages and liability to the extent that it related to damages and indemnification. Order, 5/27/20. Nevertheless, the Developer presented the same opening statement prepared for the initial trial and identified the first issue for consideration by the court to be a determination of whether either the Developer or the Association was liable for trespass. N.T., 6/11/20, at 11. The Developer was permitted to present testimony from a number of witnesses including David Biddison, a principal of the Developer. Biddison testified that water in the Development was artificially diverted by the stormwater management system/detention pond and then discharged out to a pond, and from there into a stream bed or tributary all located on the Development property; the water then continued downstream and ultimately reached the Kowalski property. *Id*. at 23-24.

Matthew B. Schmidt, then a project technician/stormwater designer employed by Hampton Technical Associates, who was engaged in the design and review of the stormwater management facilities for the Development testified that as designed, the stormwater management facilities generated a

rate of discharge of water from the Development onto Kowalski's property that was the same or less than the amount of water before its implementation.[7] *Id.* at 57. He further testified that at a September 14, 2012 on-site meeting with representatives from the Developer, DEP, and the municipality, Hampton Technical was asked whether there was anything they could do to further reduce water on Kowalski's property, and the possibility was discussed of changing the size of the "low flow orifice" in the detention pond, but this did not occur. *Id*. at 62. He testified as to various exhibits that documented the stormwater management approval received in 2007 from New Sewickley Township, as well as a letter from Shoup Engineering, representing Economy Borough, indicating its tentative approval of the storm management system. *Id.* at 68. He testified that a stormwater plan that proposed to discharge more water from a development post-development as occurred pre-development would never be approved by a municipality, as dictated by local ordinances and regulations. *Id*. at 98. Schmidt agreed that "digging up the undersized pipes on Kowalski's property and putting Mother Nature back to her original condition" and "returning Mother Nature to the open swale" would

_____

[7] Schmidt explained the system for collection of water in simple terms:

> The water rains on the roof, goes into the gutters, goes down into the piping adjacent to the house, [ ] and it's typically piped out to the catch basin out in front of the house, which then goes from the catch basin through the piping into the stormwater detention facility, and once the facility fills up, it goes out the outfall pipe into the unnamed tributary.

N.T., 6/11/20, at 52.

more adequately convey the flow through Kowalski's property and solve the flooding problem, and confirmed that Shoup Engineering and the DEP agreed that his stormwater design did not increase the rate of flow from the Liberty Hills property post-development. *Id*. at 75-78.

Also testifying for Appellees was Scott Kerber, who served as project manager and estimator for the Development; Kerber prepared a cost estimate for the construction of a swale across the Kowalski property. *Id*. at 125-140; 2020 Trial Exhibit 15. Daniel Fisher, a hydrogeologist, licensed geologist and environmental consultant testified as to the cause and effect relationship between the development of the condominiums and changes to the groundwater flows on the Kowalski property. N.T., 6/11/20, at 145-177. He examined historical patterns of seepage visible in aerial photos taken in 1938, 1958, 1967, 1993, 2005, and 2014, and opined that the buried piping system is too small to handle the natural flow of water, the water seepage shown is longstanding, and has not been increased or decreased by the Development. *Id*. at 153-155.

The trial court properly considered all of the testimony offered by Appellees at the trial on remand, and we discern no denial of due process. Appellees argue the evidence that they were permitted to present at trial, which they assert was found credible but ultimately ignored by the trial court, has demonstrated that they did not alter the natural course of the water and therefore cannot be liable for trespass; they assert that waters were discharged *on their property* and not into an artificial channel, but rather into

a pre-existing tributary, or waters of the Commonwealth – "the water flows where it always has." Appellees' Brief at 10-13. The evidence proffered by Appellees, however, does not alter this Court's finding in 2019 that by collecting stormwater onsite and channeling it into a stormwater management system that included a detention pond located on its own property, the Developer committed a trespass. *See Kowalski*, 206 A.3d at 1148.

In its opinion, the trial court reviewed and discussed the expert testimony on damages presented by Kowalski during the first trial. The trial court described three possible damage awards submitted by the parties,[8] and ultimately rejected the option introduced by Kowalski, deeming it unreasonable:

> The evidence shows that the natural flow of surface water before the [Development] overwhelmed the 12-24 inch pipes installed by Mr. Hoffman. The resulting overflow is the amount of surface water that Mr. Kowalski must accept because nature requires it. If the Court were to award the costs of installing the larger pipes, that would not only correct the excess flow of surface water onto Mr. Kowalski's property from the [Development], but it would also correct the flow of surface water that nature dictates – a remedy that would do more than compensate Mr. Kowalski for his loss attributable to the continuing trespass. It would, in fact, provide a windfall.

---

[8] "1) Mr. Kowalski seeks the cost to install a 36-inch to 42-inch pipe; 2) the defendants argue that if damages must be awarded, then the cost to install a steel plate over the orifice is the appropriate remedy; and 3) the defendants suggest that the cost to install a swale in place of the existing undersized pipes would be a more appropriate remedy than awarding Mr. Kowalki's request relief." Trial Court Opinion, 12/3/20, at 11-12.

Trial Court Opinion, 12/3/20, at 14. We reject Kowalski's argument that the trial court erred in relying on the Developer's witnesses, and find no error in the trial court's determination to award these damages, which are supported by competent evidence.

The parties' remaining arguments concern the issue of standing. Kowalski seeks to quash the appeals of both the Association and the Developer. He asserts that the Developer prevailed in the trial court and settled its indemnification claim with the Association, *see* Application for Special Relief/Motion to Quash Appeal Filed by TOA PA V, L.P., 9/24/21, and thus had no interest in the litigation. Kowalski further asserts that the Association failed to file post-trial motions, *see* Application for Special Relief/Motion to Quash Appeal Filed by Traditions of America at Liberty Hills (Beaver) Condominium Association, 9/24/21, and thus its appeal should also be quashed. Kowalski also sought to strike the Association's answer to its application to quash the Association's appeal, *see* Application for Special Relief/Motion to Strike Appellee/Cross Appellant Traditions of America at Liberty Hills Condominium Association's Answer to Appellant's Motion to Quash Appeal, 10/18/21, alleging that in filing an answer in opposition to its application to quash, the Association made a misrepresentation of material fact concerning the filing of post-trial motions.

In its February 22, 2022 Order, this Court directed these to be argued at the scheduled March 2, 2022 oral argument on the merits. At oral argument, the Association's counsel agreed that counsel for the Developer

would represent its interests. Upon review, we deny the applications to quash the appeals of the Association and the Developer, and the application to strike the Association's answer is similarly denied. The trial court on remand found that the Developer was liable to the Association for indemnification. Had this Court determined that neither the Association nor the Developer was liable for trespass, there would have been no liability and no indemnification. While Kowalski is correct in stating that the Association failed to file a post-trial motion, the motion for post-trial relief submitted by the Developer alleges abuses of discretion by the court in finding either it or the Association, or both, liable for trespass, and raises the issues sufficiently to apprise the trial court of possible error, such that the Association's failure to file a post-trial motion can only be viewed as harmless error.

Judgment affirmed. Applications to quash appeals and Application to strike answer to application to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2022