J-A28028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN LORENZO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD R. KOCHERSPERGER AND | : | No. 676 EDA 2023 |
| NANCY R. KOCHERSPERGER, | : | |
| BRADFORD J. QUINBY AND CARROLL | : | |
| R. QUINBY, AND WILLIAM P. | : | |
| CROSSLAND AND SONS, INC., D/B/A | : | |
| NORBILL DISPOSAL SERVICE | : | |

Appeal from the Order Entered February 10, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No:  2019-08875

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 17, 2024**

Appellant John Lorenzo ("Appellant") appeals from the February 10, 2023, order granting summary judgment in favor of Appellees Ronald R. Kochersperger and Nancy R. Kochersperger ("Appellees") that dismissed his complaint with prejudice.[1]  Appellant contends that the trial court erred in determining that the discovery rule did not toll the statute of limitations on

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] By stipulation, William P. Crossland and Sons, Inc., d/b/a Norbill Disposal Service ("Norbill") was dismissed as a party on March 1, 2022.  On January 27, 2023, the court granted summary judgment in favor of Bradford J. Quinby and Carroll R. Quinby ("the Quinbys").  Appellant does not appeal this order.

his claims. Upon review, we affirm in part, reverse in part, and remand for proceedings consistent with this memorandum.

Appellant owns a vacant parcel of land consisting of 0.4 acres located at 313 Old Dublin Pike and Swamp Road (State Road 313) in Bucks County, Pennsylvania. There is no structure on the property. It lies adjacent to a small residential property owned by Appellees and a gun shop owned by Bradford J. Quinby and Carroll R. Quinby ("the Quinbys").

In 2016, Appellant became suspicious that either Appellees or the Quinbys installed an illegal septic system and/or drainfield on his property which caused sewage effluent to flow onto his property. At various times, Appellant noticed "a big, bubbly . . . soup in front of [Appellees'] house." Motion for Summary Judgment, 6/30/22, Exhibit C, Deposition of John Lorenzo, at 69. Additionally, Appellant "noticed this black slurry of effluent that smelled acrid" with "swarms of flies around it all through the ditch in front of [his] property." *Id.* The black slurry was sometimes present on the property, and other times it was not. *Id.* at 70.

One day in 2016, Appellant approached Department of Environmental Protection ("DEP") employees parked in their vehicles. *Id.* at 87. He explained his suspicions to them and asked them to drive to his property to look, which they did. *Id.* The DEP workers said it did not look like sewage but agreed to pass along Appellant's complaint. *Id.* at 88. Thereafter, Appellant filed a complaint with the Bucks County Department of Health ("DOH") on August 10, 2016. The complaint named Appellees as the

- 2 -

responsible parties and stated that an "illegal cesspool and drain field [was] installed on my property without my permission!"[2] Motion for Summary Judgment, 7/1/22, Exhibit C, Environmental Complaint.

Appellant informed DOH that a pipe ran from Appellees' property to a ditch in front of Appellant's property, which he claimed carried discharge from Appellees' washing machine. *Id.*, Field Contact Report 8/23/16; R.R. at 161a. Appellant dug test holes approximately 30 to 48 inches deep on his property and discovered a terra cotta line and groundwater. *Id.* After conducting its own investigation, the DOH believed that Appellees' septic tank was located between the driveway and house under the arborvitaes planted near the road. *Id.* However, DOH was unable to determine the location of the drainfield and Appellees were unsure of its location. *Id.*; R.R. at 162a. The DOH concluded that "while it may be possible that [Appellees] system is gradually draining through the subsurface of [Appellant's] property, there is no conclusive evidence to indicate such. The burden of proof will be on [Appellant] to show the [DOH] where any alleged "illegal" drainfield lines are on his property." *Id.*

_____

[2] Per the DOH, neither blackwater nor graywater can be discharged onto the *surface of the ground* or into the waters of the Commonwealth. *See* Plaintiff's Answer, 9/1/22, Exhibit A, Deposition of Arthur Carlson, at 25. Blackwater is waste from the toilet. *Id.* Graywater is waste from a washing machine, kitchen sink, bathroom sink, etc. *Id.*

Thereafter, the DOH conducted dye testing which yielded a negative result.[3] *Id.* At that time, Appellant stated that he planned to excavate to determine if there was a septic system and/or drainfield illegally installed on his property. *Id.* Appellant obtained an estimate of $10,000 to $15,000 to excavate.[4] Motion for Summary Judgment, 6/30/22, Exhibit C, Deposition of John Lorenzo, at 110. Around the same time, Appellant was in a car accident that "messed up [his knees] bad," and he determined it was too costly to move forward with the excavation. *Id.*

In July 2019, Appellant filed a second complaint with the DOH alleging that Appellees illegally installed a septic system and/or drainfield on his property. *See* Third Amended Complaint, 10/23/20, ¶ 20. In August 2019, Appellant "excavated the area under the row of arborvitaes and found evidence of the septic system drainage field." *Id.*, ¶ 21. Thereafter, DOH investigated and discovered that Appellees' washing machine discharged into the ditch in front of Appellant's property. Motion for Summary Judgment, 7/1/22, Exhibit C, Field Contact Report 8/20/19; R.R. at 169a. Appellees

---

[3] DOH uses dye testing "to discern whether there's a sewage overflow or whether it's just a groundwater discharge." Plaintiff's Answer, 9/1/22, Deposition of Arthur Carlson, at 18. Dye is placed in the toilets and other fixtures in a house or other structure and then the surrounding area is monitored for the presence of dye. *Id.* at 19.

[4] Appellant did not provide a date which he obtained an estimate. However, there is a notation in the August 23, 2016, field contact report that Appellant advised DOH that he was "in discussion with George Allen Wastewater to dig a trench along his property line." Motion for Summary Judgment, 7/1/22, Exhibit C, Field Contact Report 8/23/16; R.R. at 162a.

remedied the issue and plumbed the washing machine into the main septic system. *Id.*, Field Contact Report 9/10/19; R.R. at 173a.

The DOH conducted extensive dye testing at both Appellees' and the Quinbys' properties. Arthur E. Carlson, a certified professional soil scientist and supervisor at the Bucks County DOH, testified that dye was discovered in the ditch in front of Appellant's property after the first round of testing. *See* Plaintiff's Answer, 9/1/22, Exhibit A, Deposition of Arthur Carlson, at 10, 51. However, the dye was "very faint" and did not fluoresce as it should have; therefore, he said there was a chance that it was not dye from their dye test.[5] *Id.* Carlson explained that it could have been an algal mass, an algal by-product, antifreeze, or green food dye. *Id.* at 53-54.

Thereafter, Appellant dug a trench five feet deep along his property line. Carlson testified that there was definite dye-laced effluent at the bottom of the trench, and it smelled of sewage. *Id.* at 56. There was "no question that . . . it was sewage from a system which we had dye-tested." *Id.* Though he could not definitively say which property the dye-laced effluent came from, Carlson testified that he would assume that it was Appellees' property based

---

[5] When the results of a dye test are light or faint, as was the case here, a sample is taken back to the DOH office and placed under a special blacklight to see if it fluoresces. *Id.* at 52-53. If it fluoresces, the results of the dye test are positive, meaning the sample contains sewage. *Id.*

on the amount of dye they put in Appellees' lines, the amount of groundwater present and the fact that Appellant's property was downslope from Appellees.[6]

Carlson testified, however, that the dye-laced effluent found five feet below the surface in the trench did not indicate anything illegal. *Id.* at 57. The DOH is concerned with waste discharging onto the *surface* of the ground, not *groundwater*. *Id.* at 57-58. Based on what was found, Carlson determined that the septic system was working as it should – underground. *Id.* at 84.

Additionally, Carlson observed part of a septic system in the trench. *Id.* at 57. He was unable to say how old the system was or when it could have been installed. *Id.* at 57-58. Carlson testified that there were three possibilities regarding installation of the septic system in question:

> One, it was installed before [19]56 and they wouldn't have needed a permit; [two] that [the system] was installed after '56 and it might have been logged under a different project number . . . maybe it was never microfilmed, we don't have record of it; and, three, there's a possibility that it was installed illegally.[7]

---

[6] Additionally, the Quinbys' gun shop only had a single toilet tied into the septic system. *Id.* at 20.

[7] The Bucks County DOH was formed in 1956 and began requiring permits for any work involving an on-site sewage system and/or drainfield. *Id.* at 13-14. Thus, any system installed prior to 1956 was "grandfathered" in and did not require a permit, and any system installed after 1956 required a permit. *Id.* at 15. However, the filing system for the permits was subpar, and some records have been lost or misfiled. *Id.*

*Id.* at 68. Ultimately, he said that "we don't have any proof that an illegal cesspool or drainfield was installed on [Appellant's] property." *Id.* at 91.

On December 27, 2019, Appellant filed his first civil complaint consisting of two counts – private nuisance and trespass. Appellant averred therein that he noticed changes to his property beginning in 2014 when Appellees planted fruit trees on his property. Complaint, 12/27/19, ¶ 9-10. In 2017, Appellant "began to notice [topographical] changes to the parcel but was unable to determine what had occurred to change the parcel." *Id.*, ¶ 12. In 2018, Appellant received a permit to build a driveway, and during the excavation process, discovered a septic system on his property. *Id.*, ¶ 13-14. According to the complaint, Norbill admitted that it installed a septic system on Appellees' property. *Id.*, ¶ 15-16. The purported damage was the cost to remove the system from Appellant's property. *Id.*, ¶ 19.

Appellant filed an amended complaint on April 14, 2020, consisting of three counts – trespass, conversion, and private nuisance. In the amended complaint, Appellant averred that there was "[an illegal] septic drainage field on [Appellant's] property that is used by a joint-septic system that services [Appellees] and the Quinby property." Amended Complaint, 4/14/2020, ¶¶ 8-10. According to the amended complaint, Appellant received information in 2019 that Norbill installed the septic system. *Id.*, ¶¶ 11-16. He then excavated the property and "found evidence of the septic system drainage field." *Id.*, ¶ 20. The purported damage was that Appellant "will have to expend substantial funds to remediate" his property. *Id.*, ¶ 24.

- 7 -

On September 17, 2020, Appellant filed a second amended complaint. The facts were substantially similar to the first amended complaint. However, Appellant's second amended complaint added two counts for a total of five counts – trespass, ejectment, private nuisance, negligence, and negligence *per se*. *See* Second Amended Complaint, 9/17/2020.

Appellant filed a third amended complaint on October 23, 2020. Again, the facts remained the same, and the only change was the removal of one count, for a total of four counts – trespass, private nuisance, negligence, and negligence *per se*.[8] *See* Third Amended Complaint, 10/23/20. The trespass claim alleged injury to Appellant's property from the installation of a septic system and/or drainfield without authorization. *Id.*, ¶¶ 26-32 The nuisance claim alleged injury from the "seepage of sewage and other discharges" onto Appellant's property. *Id.*, ¶¶ 33-37. The negligence count contends that Appellees breached their general duty not to cause Appellant harm by "installing or causing the installation of a septic system and/or septic system discharge field" on his property. *Id.*, ¶¶ 38-42.

Appellees filed a motion for summary judgment arguing that: (1) Appellant failed to submit an expert report in support of his claims; (2) there was insufficient evidence to support his claims; and (3) the claims are barred by the statute of limitations because Appellant was aware of his claims against

---

[8] The negligence *per se* count was only filed against Norbill. Because the Quinbys and Norbill have been dismissed from this action, we limit our focus to the proceedings against Appellees. Thus, we will not address this count further.

Appellees as early as August 10, 2016. **_See_** Motion for Summary Judgment, 7/1/22. The trial court conducted oral argument and ultimately granted summary judgment in favor of Appellees on February 10, 2023. This appeal followed. On appeal, Appellant raises one issue for our review:

> Did the trial court commit an error of law when it found no genuine issue of material fact as to whether [Appellant] was reasonably diligent in discovering the harm being caused and whether the [n]eighboring [p]roperty [o]wners were responsible for causing the harm when [Appellant] initially had suspicions in 2016 that the [n]eighbors were causing sewage effluent to flow onto his property but extensive testing by the Bucks County Department of Heath was inconclusive?

Appellant's Brief, at 4.

Our standard of review of a trial court's grant of summary judgment is _de novo_ and our scope of review is plenary. **_Khalil v. Williams_**, 278 A.3d 859, 871 (Pa. 2022).

> [A] trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. It is the moving party's burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. The trial court must also resolve any doubts as to the existence of a genuine issue of material fact against the moving party and may grant summary judgment only where the right to such a judgment is clear and free from doubt.

**_Id._** (citations and quotation marks omitted). "An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion." **_Id._**

The trial court found that Appellant's claims were barred by the applicable statute of limitations because, under the discovery rule, "Appellant had actual knowledge or at a minimum knew or had reason to know of the sewage effluent flow in a drainage area under his property from his neighbor's septic tank by August 10, 2016." Trial Court Opinion, 4/26/23, at 5. The trial court explained:

> Appellant's cause of action was clearly discoverable by the exercise of diligence in the use of means within the reach of Appellant and it was clear to the [trial court] that Appellant was aware of these issues in August 2016, but did not undertake any further attempts to address the problem until after the applicable statute of limitations period ended. Despite knowledge of the underground drainage field issue in August 2016, he waited until three years later, in August 2019[,] to excavate the area alongside his property line. Appellant had sufficient information to know or have reason to know there was an issue regarding an underground drainage area when he documented his complaint with both environmental agencies and expressly informed them of his concerns, and therefore had enough reason from August 2016 until August 2018, to commence a lawsuit to seek to remedy the issue of effluent flow underground into his property.
>
> * * * *
>
> The evidentiary record clearly demonstrates that Appellant knew or should have known of the cause of his alleged injury[,] and he failed to prove that he used reasonable diligence in discovering the cause of that injury, thus barring him from asserting his claims under the discovery rule.

*Id.* at 5-6.

"The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable," and it acts to toll the running of the statute of limitations. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). "[T]he salient point giving rise to its application is the inability of the injured,

- 10 -

despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Id.* Reasonable diligence is an objective standard that looks at what the plaintiff might have known by exercising diligence, not what the plaintiff actually knew of the injury or its cause. *Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018). Under this standard, "a plaintiff's actions are examined to determine whether the plaintiff demonstrated those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and interest of others." *Id.* (citing *Fine*, 870 A.2d at 858) (quotation marks omitted). "If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Laboratories*, 505 A.2d 973, 988 (Pa. Super. 1985).

The statute of limitations for private nuisance, trespass and negligence is two years. *See* 42 Pa.C.S.A. § 5524. We first address Appellant's claims for trespass and nuisance given some of the commonalities each share with respect to the statute of limitations. The time when the statute of limitations commences with respect to either a trespass or nuisance claim depends on whether the trespass or nuisance is permanent or continuing:

> **A permanent trespass or nuisance, as the name suggests, is one that effects a permanent change in the condition of the land, and in such a case, the statute of limitations begins to run at the time of the original trespass.** A permanent trespass or nuisance entitles the possessor of the land to institute a single action for all past and future damages.

Conversely**, in the case of a continuing trespass or nuisance it is impossible to know exactly how many incidents of trespass will occur in the future,** or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action. For that reason, **a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense.**

To determine whether a trespass or nuisance constitutes a permanent or continuing cause of action, courts must consider a variety of factors, including: 1) the character of the structure or thing which produces injury; 2) whether the consequences of the [trespass/nuisance] will continue indefinitely; and 3) whether the past and future damages may be predictably ascertained.

***Caruso-Long v. Reccek***, 243 A.3d 234, 239 (Pa. Super. 2020) (citations and quotation marks omitted) (emphases added).

The Restatement (Second) of Torts § 162 further explains:

A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. **Since his conduct has once [and] for all produced a permanent injury to the land,** the possessor's right is to full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land.

Restatement (Second) of Torts § 162, cmt. e (emphasis added).

Therefore, as a preliminary matter, we must determine whether Appellant's claims of trespass and nuisance are continuing or permanent to decide whether the trial court correctly applied the statute of limitations when granting summary judgment. In its opinion, the trial court concluded

- 12 -

Appellant's causes of action were barred by the applicable two-year statute of limitations, since Appellant knew as early as 2016 of the underground drainage field, but waited until 2019, three years later, to commence his suit. The court concluded that Appellant failed to exercise reasonable diligence in discovering the cause of his injury.

Appellant's causes of actions are premised upon two alleged acts: (1) the installation of a septic system and drainfield; and (2) the effluent and other wastewater discharge from Appellees' property onto Appellant's property. Both the intrusion of the septic system and the continuing discharge of effluent onto the Appellant's property undoubtedly constitute trespass(es). "The tort of trespass is any physical entry upon the surface of the land, and may occur by any number of means, such as walking on, flooding, or throwing objects on land." *Caruso-Long*, 243 A.3d at 238 (citation and quotation marks omitted). The construction of that part of the septic system that intrudes upon Appellant's property constitutes a permanent trespass, since the construction was done once and produced a permanent injury to Appellant's land. Appellant was entitled to a single action in trespass to address the encroachment of this septic system onto his land. Without a doubt, Appellant's action, first commenced in 2019, exceeded the two-year statute of limitations for a permanent trespass, even under the discovery rule. The uncontradicted evidence shows that Appellant discovered a terra cotta line on August 23, 2016; therefore, Appellant had two years – until August 23, 2018 – to file an action. Appellant did not file a complaint until December

27, 2019, which is beyond the statute of limitations. Therefore, the trial court did not err in granting summary judgment in favor of Appellees with respect to Appellant's permanent trespass claim.

The same, however, cannot be said for the continuing discharge of effluent from the septic system. It is impossible to know how many times in the past or in the future effluent was or will be discharged upon Appellant's land. Under these circumstances, Appellant is entitled to maintain successive actions based upon effluent continuing to trespass upon his land. The two-year statute of limitations does not bar suit for this continuing trespass. It was error for the trial court to conclude otherwise.

We engage in much the same analysis with respect to Appellant's claim for nuisance.[9] The trial court dismissed Appellant's action for nuisance believing it too was barred by the two-year statute of limitations for the same reason it dismissed Appellant's trespass claim; the fact that the drainage field was known to Appellant as early as 2016. A nuisance, or private nuisance as is the case here, concerns conduct occurring upon a person's *own* property that is not wrongful in itself, but wrongful only in the consequences which may flow from it. To the extent the problems of which Appellant complains emanate from the construction of a septic system upon Appellees' land that

---

[9] "A nuisance is the unreasonable, unwarrantable, or unlawful use by a person of his own property . . . producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." *Caruso-Long*, 243 A.3d at 238-39 (citation and quotation marks omitted).

results in the discharge and/or odor of effluent upon Appellant's property, Appellant has stated a claim for a private nuisance due to the continuing and sporadic nature of this problem. Like a continuing trespass, the continuing nature of this nuisance is not barred by the two-year statute of limitations. The trial court erred to conclude otherwise.

We find the following cases instructive. In **Kowalski v. TOA PA V, L.P.**, 206 A.3d 1148 (Pa. Super. 2019), plaintiff brought an action against a condominium association and developer because the development of the condominium uphill from the plaintiff's property caused excessive water runoff and flooding. **Id.** at 1153-54. We found that the development of the condominium was a permanent change. **Id.** at 1163. However, the permanent change did not constitute a change or injury to the plaintiff's property. **Id.** Rather, the permanent change caused temporary flooding of plaintiff's property that was intermittent and unpredictable after heavy rains. **Id.** Therefore, we held that the trial court properly characterized the flooding as a continuing trespass. **Id.**

Likewise, in **Caruso-Long**, plaintiffs brought an action in trespass and nuisance due to the neighbor's trees encroaching on the plaintiffs' property which caused damage and injury to one of the homeowners. 243 A.3d at 236-37. This Court held, based on prior precedent, that the encroachment of the trees constituted a continuing trespass and a continuing nuisance. **Id.** at 240. We explained that "unless the trees are removed, the branches and roots will continue to grow and are likely to cause repeated damage to [plaintiffs']

- 15 -

property or to [plaintiffs] themselves, rendering the calculation of future damages speculative at best." *Id.*

Similarly, in *Miller v. Stroud Twp.*, 804 A.2d 749 (Pa. Commw. Ct. 2002), the plaintiff property owner filed suit against the township after it installed a sewer line on or near plaintiff's property. *Id.* at 750. The installation of the sewer line caused plaintiff's basement to become flooded with sewage and fecal matter after each rain. *Id.* The Commonwealth Court held that "[t]he construction [of the sewer line], coupled with the effects of rainfall, resulted in a continuing trespass of water and fecal matter, which caused damage to [plaintiff's] property and unhealthy concentration of fungi, mold and bacteria." *Id.* at 754.

Conversely, in *Cassel-Hess v. Hoffer*, 44 A.3d 80 (Pa. Super. 2012) during the construction of a commercial office building next to plaintiff's property, a wetland was filled with soil which caused flooding on plaintiff's property. *Id.* at 81-82. The flooding resulted in a "mosquito-infested lake" which allegedly reduced the value of plaintiff's property. *Id.* at 82. Plaintiff brought an action for both nuisance and trespass. *Id.* We held that the construction of the "mosquito-infested lake" constituted a permanent change in the condition of the land. *Id.* at 87. "Thus, with respect to [the] nuisance claim, the two-year statute of limitations began to run (at the latest) in 2005" when plaintiff became aware of the "mosquito-infested lake." *Id.* at 87-88. Regarding the trespass claim, however, we found that there was a question of fact as to **when** the trespass occurred. *Id.* at 88. Therefore, the case was

remanded to the trial court to determine when the permanent trespass occurred and whether plaintiff's claim was barred by the statute of limitations. *Id.* at 89.

With respect to Appellant's negligence claim, the trial court did not err in concluding that this claim was barred by the applicable statute of limitations. Appellant was aware of a problem with effluence and/or wastewater discharge on his property in 2016. Although Appellant was not certain as to the precise cause of this encroachment, he certainly possessed sufficient knowledge to warrant further investigation as of that time to determine the cause of the problem. As stated, the exercise of reasonable diligence under the discovery rule is an objective standard that looks at what the plaintiff might have known by exercising diligence, not what the plaintiff actually knew of the injury or its cause. Therefore, the trial court did not err in granting summary judgment in favor of Appellees on Appellant's negligence claim.

In sum, we affirm the trial court's grant of summary judgment on Appellant's claims for permanent trespass and negligence as barred by the two-year statute of limitations. We reverse and remand for further proceedings on Appellant's claims for continuing trespass and continuing nuisance.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024